Ernest D. Moody, CPS #229
2nd Judicial Circuit of Florida
Date: 2/26/25    Time: 8:45am

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BOAR'S HEAD PROVISIONS CO., INC., DOES 1 to 10, inclusive

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
2/13/2025 5:56:35 PM
Clerk of the Superior Court
By R. Chanez        ,Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SHARYN BUKSBAUM, JANINE SABELLA, DEBORAH THAYER, DIESHA HODGES, California residents, individually, and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego County Superior Court

330 W. Broadway, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):* 25CU007988C

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Thiago Coelho, Esq./WILSHIRE LAW FIRM, PLC, 3055 Wilshire Blvd., 12th Floor, Los Angeles, CA 90010 / (213) 381-9988

DATE:
*(Fecha)* February 14, 2025

Clerk, by
*(Secretario)* R Chanez

, Deputy
*(Adjunto)*

R. Chanez

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Boars Head Provisions Co Inc
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* 415.95 (business organization, form unknown)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20; 465
www.courts.ca.gov

Thiago M. Coelho (SBN 324715)
thiago.coelho@wilshirelawfirm.com
Chumahan B. Bowen (SBN 268136)
chumahan.bowen@wilshirelawfirm.com
Jennifer M. Leinbach (SBN 281404)
jennifer.leinbach@wilshirelawfirm.com
Reuben Aguirre (SBN 319699)
reuben.aguirre@wilshirelawfirm.com
**WILSHIRE LAW FIRM**, **PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Proposed Class*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

2/13/2025 5:56:35 PM

Clerk of the Superior Court
By R. Chanez          ,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

SHARYN BUKSBAUM, JANINE SABELLA, DEBORAH THAYER, DIESHA HODGES, California residents, individually, and on behalf of all others similarly situated,

       *Plaintiff,*

    v.

BOAR'S HEAD PROVISIONS CO., INC., DOES 1 to 10, inclusive

       *Defendants.*

Case No.:    **25CU007988C**

**CLASS ACTION COMPLAINT:**

1. INTENTIONAL MISREPRESENTATION;
2. NEGLIGENT MISREPRESENTATION;
3. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500 ET. SEQ.;
4. VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.;
5. BREACH OF EXPRESS WARRANTY;
6. BREACH OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA") CALIFORNIA CIVIL CODE § 1770(A)(5);
7. BREACH OF IMPLIED WARRANTY OF MERCHANTABLITY.

**DEMAND FOR JURY TRIAL**

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1.      Defendant BOAR'S HEAD PROVISION CO., INC ("Boar's Head") manufactures food products, including delicatessen meats, cheeses, prepackaged meals like sandwiches and salads, and condiments. Boar's Head markets its products as premium, high-quality, and safe for consumer consumption.

2.      Boar's Head has engaged in false and misleading advertising by misrepresenting the safety and quality of its food products, deceiving consumers into paying a premium for goods that fail to meet its advertised standards of quality and care in preparation.

3.      Boar's Head spends considerable resources on marketing campaigns representing to consumers that Boar's Head is a premium manufacturer of high-quality meats, cheeses, and condiments. For instance, Boar's Head's slogan is "Compromise Elsewhere." The narrator in a 2020 Boar's Head commercial explains:

> In the beginning, our founder, Frank Brunkhorst, had a very simple idea. Make the finest delicatessen products possible. Nothing less. Five generations later, we still insist on the same unwavering commitment to those standards we established long ago. Standards mostly abandoned in a mass-produced world. At Boar's Head, we are relentless about quality. If a product does not live up to our exacting standards, it does not carry the Boar's Head name. Simple as that. Our products are made of only the finest ingredients. [. . .] We know there are easier, faster, even cheaper ways to make our products. But cutting corners doesn't cut it for us. [. . .] you can count on Boar's Head for products made with exceptional care. At a time when the quality of food has come into question more than ever, you can trust there is never a question of our commitment to quality above all else. It's a promise we've made for five generations, and it's a promise we'll continue to make. Boar's Head. Compromise elsewhere.[1]

4.      On the "Food Safety" portion of its website, Boar's Head touts its "Clean & Safe Facilities" and practice of "Maintaining Rigorous Sanitation Practices":

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

---

[1] Boar's Head: Compromise Elsewhere, https://www.youtube.com/watch?v=yZK8r8aoNJI, CARAVAN, (Mar. 31, 2020).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL



WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

5.      Unfortunately for consumers, Boar's Head has failed to keep its five-generation promise of quality and care. The United States Department of Agriculture (USDA) recently released voluminous documentation unveiling the hypocrisy. According to USDA inspection reports, Boar's Head's meatpacking facilities more closely resemble an Upton Sinclair novel than the glittering picture of cleanliness and quality it portrays in its high-priced advertising. Lines from the USDA inspection reports of Boar's Head's meatpacking facilities could have been borrowed directly from the 1906 Neill-Reynolds Report to President Roosevelt, [2] the meat plant inspection report that gave rise to the Federal Meat Inspection Act of 1906.[3]

---

[2] HR Doc. No. 878, 59th Cong., Conditions in the Chicago Stock Yards. Message from the President of the United States, Transmitting the Report of Mr. James Bronson Reynolds and Commissioner Charles P. Neill, Special Committee Appointed to Investigate the Conditions in the Stock Yards of Chicago. June 4, 1906. Read; referred to the Committee on Agriculture, available at https://wp-cpr.s3.amazonaws.com/uploads/2019/06/rooseveltletter.pdf ("An absence of cleanliness was also found everywhere in the handling of meat being prepared for the various meat-food products.") ("These [meat processing equipment] are frequently found water soaked, only half cleansed, and grease and meat scraps were found adhering to them, even after they had been washed and returned to service.") ("These dark and dingy rooms are naturally not kept suitably clean.") (hereinafter "1906 Neill-Reynolds Report").

[3] Isaac Baker, *Meat Inspection Act of 1906*, THEODORE ROOSEVELT CENTER, (Accessed Feb. 13, 2025), https://www.theodorerooseveltcenter.org/Learn-About-TR/TR-Encyclopedia/Capitalism%20and%20Labor/Meat%20Inspection%20Act%20of%201906.

6. According to the USDA, at numerous Boar's Head meat packaging facilities, filth, decay, and reckless disregard for food safety run rampant. Boars' Head meat plants are plagued by dirty and meat-caked machinery, rusted and chipping equipment, pools of standing water teeming with fat and debris, and infestations of cockroaches and flies, producing contaminated food unfit for human consumption. USDA inspectors found raw meat exposed to dripping condensation, unsanitary processing equipment caked in rotting residue, and contaminated food product pushed into production despite obvious health risks. Boar's Head has endangered public health by, among other things, allowing black mold-like substances to fester in production areas and failing to document critical food safety hazards while continuing to charge consumers a premium for its purportedly high-quality products.

7. This class action lawsuit is brought by Plaintiffs and others similarly situated who purchased food products Defendant touted as meeting the highest standards of quality, care in preparation, sanitation, and food safety. Plaintiffs and the putative class suffered economic damages due to Defendant's misconduct and seek injunctive relief and full restitution for the purchase price of the contaminated food products packaged and manufactured at Boar's Head facilities located at Forrest City, Arkansas, New Castle, Indiana, and Petersburg, Virginia, and sold to California residents in California, from the time beginning three years prior to the filing of this Complaint.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to Section 410.10 of the California Code of Civil Procedure.

9. This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of California and purposefully availed itself, and continues to avail itself, of the jurisdiction of California through the privilege of conducting its business ventures in the state of California, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this County, as Defendant does business throughout this County.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

3

1    Plaintiffs made their purchases of multiple Boar's Head products from local retailers California,

2    consumed and served the products to their families in this County. These products were

3    manufactured at Boar's Head facilities in Forrest City, Arkansas, New Castle, Indiana, and

4    Petersburg, Virginia.

5                                                **THE PARTIES**

6        11.    Plaintiff SHARYN BUKBAUM is a resident of Carlsbad, California, who

7    purchased Boar's Head products on or around August 2024, from a retailer in California.

8        12.    Plaintiff JANINE SABELLA is a resident of Dana Point, California, who purchased

9    Boar's Head products on or around December 2024, from a retailer in California.

10       13.    Plaintiff DEBORAH THAYER is a resident of Redding, California, who purchased

11   Boar's Head products on or around December 2024, from a retailer in California.

12       14.    Plaintiff DIEISHA HODGES is a resident of Oakland, California, who purchased

13   Boar's Head products on or around January 2025, from a retailer in California.

14       15.    Before their purchases, Plaintiffs saw and reviewed Defendant's advertising claims

15   via various media, and on the product packaging and labeling itself, and made their purchases in

16   reliance thereon. Plaintiffs specifically relied upon packaging representations containing the

17   Boar's Head brand, and bearing the promise of quality contained in the slogan "Compromise

18   Elsewhere," by which Boar's Head touts itself as producing food products that are high-quality,

19   carefully prepared, and safe for human consumption, but which failed to disclose, and omitted,

20   systemic unsanitary conditions and contamination in the preparation process at Boar's Head

21   facilities.

22       16.    Plaintiffs did not receive the promised benefit or the value of their purchase.

23   Plaintiffs would not have purchased the products had they known the products were contaminated.

24   Plaintiffs were economically injured by Defendant's misrepresentations, which induced them to

25   purchase the products at an artificially inflated price premium.

26       17.    Plaintiffs would purchase the products again if they were assured the products were

27   not prepared in unsanitary, dangerous, and contaminated conditions, and were in fact prepared with

28   the superior level of quality and care claimed by Defendant.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

4

18.     Defendant BOAR'S HEAD PROVISIONS CO., INC. is a privately-held corporation whose principal place of business is in Sarasota, Florida. Founded in 1905 in Brooklyn, New York, Boar's Head has since expanded its distribution network across the United States, including in this district. Defendant, at all times herein mentioned, was a business entity qualified to do business and actually conducting business throughout the State of California.

19.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein, and reserves the right to seek leave to amend to add new Plaintiffs, if necessary.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20.     Boar's Head food products are sold in major retailers in California including, for example, Sprouts Farmers Market, Albertsons, Safeway, Pavilions, Von's and other grocery chains and retailers. Boar's Head markets its food products as premium, high-quality, and meticulously prepared under strict sanitary conditions. Through advertising, labeling, and public statements, Boar's Head cultivated an image of excellence in food safety and quality, leading consumers to believe they purchased safe and sanitary products at a price premium, often double the price of similar generic products.

21.     In July 2024, Boar's Head recalled dozens of products exposed to contamination by the pathogen and bacteria *Listeria monocytogenes* found in Boar's Head liverwurst, which caused listeria poisoning in 61 people across 19 states, leading to the death of at least 10 individuals.[4] These listeria contamination and wrongful death cases led to listeria-contaminated product recalls: first only of liverwurst produced on the same day and on the same line as that of product from a sealed product that tested positive for the presence of *Listeria monocytogenes*, then later, Boar's Head recalled all product originating from the offending facility located in Jarratt, Virginia.[5]

---

[4] Centers for Disease Control and Prevention, Listeria Outbreaks Linked to Deli Meats, (Jul. 19, 2024) https://www.cdc.gov/listeria/outbreaks/delimeats-7-24.html.
[5] USDA, *Review of the Boar's Head Listeria monocytogenes Outbreak*, (Jan. 10, 2025),

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1    Finally, after public outrage reached a crescendo, Boar's Head shut down its Jarratt, Virginia

2    processing plant, stopped manufacturing liverwurst. These events prompted litigation by at least

3    seven plaintiffs in multiple jurisdictions. [6] On or before December 2, 2024, Boar's Head agreed to

4    a preliminary nationwide class settlement covering products tied to the listeria outbreak and

5    covering a class of consumers purchasing products originating from the Jarratt, Virginia plant until

6    July 2024.[7]

7        22.    Unfortunately for consumers, Boar's Head's legal violations were not isolated to

8    the listeria outbreak linked to liverwurst produced at the Jarratt, Virginia plant.

9        23.    On January 15 2025, AP News released a scathing report documenting additional,

10   previously-undisclosed unsanitary conditions at numerous additional Boars Head facilities

11   spanning many years.[8] Specifically, AP News revealed that Freedom of Information Act ("FOIA")

12   requests from news outlets had caused the publication of US Department of Agriculture ("USDA")

13   investigation and inspection reports documenting six years of unsanitary conditions, including, for

14   example, "insects and slime" at additional Boar's Head facilities in Forrest City, Arkansas, New

15   Castle, Indiana, and Petersburg, Virginia.[9] The news article highlighted the following excerpts

16

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

---

17   https://www.fsis.usda.gov/sites/default/files/media_file/documents/Boars-Head-Public-Report-012025.pdf ("On
18   July 25, 2024, the Maryland Department of Health confirmed that an unopened package of liverwurst product,
     produced by M12612 [Boar's Head, Jarratt, Virginia plant] and collected at retail, was positive for *Lm* [*Listeria*
19   *monocytogenes*]. That same day, FSIS [USDA Food Safety and Inspection Service] suspended inspection of all
     operations on the production line used to produce liverwurst. On July 26, 2024, M12612 recalled all liverwurst
20   products in commerce and additional deli meat products (approximately 207,528 pounds) that were produced on
     the same line and day as the confirmed *Lm* positive liverwurst sample reported by the Maryland Department of
21   Health. On July 29, 2024, WGS [whole genome sequencing] results from the Maryland sample confirmed that
     the liverwurst sample was contaminated with the outbreak strain of *Lm* and an IVT [intensified verification
22   testing] sample taken from a pallet jack (equipment used to lift and move pallets) that traveled throughout the
     raw and RTE [ready-to-eat] areas of the plant was also confirmed *Lm* positive by FSIS (the remaining IVT
23   samples tested negative). As a result, FSIS suspended inspection on all production lines at M12612 that same
     day. The establishment expanded the recall on July 30, 2024, to include all products produced at M12612 ꜱ
24   between May 10, 2024, and July 29, 2024. The recall involved over 7 million pounds of RTE meat and poultry
     products.").
25       [6] Metz, Sarah, *Boar's Head faces multiple lawsuits after its deli meat is linked to deadly listeria
     outbreak* (Sept. 6, 2024), CBS NEWS, https://www.cbsnews.com/news/boars-head-recall-listeria-deli-meat-
     lawsuits/
26       [7] Notice of Settlement, *Gatoff et al. v. Boar's Head Provisions Co., Inc.* (Dec. 2, 2024), Case No.: 24-
     cv-18.
27       [8] Aleccia, Jonel, *USDA documented insects and slime at Boar's Head plants, records show*, (Jan. 14,
     2025), AP NEWS, https://apnews.com/article/listeria-boars-head-deli-meat-
     65c4016aea0fc9e8505350ebc7b41e39.
28       [9] *Id.*

6

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

from the USDA Inspection Reports: "Equipment 'covered in meat scraps,'" "'Dry crusted meat from the previous day's production' and 'dark, stinky residue' left behind," "A doorway covered in 'dried meat juices and grime,'" "'Green mold and flaking paint,'" "'Unidentified slime' and 'an abundance of insects,'" and "a puddle of 'blood, debris and trash.'"[10]

24. USDA inspectors documented alarming conditions at these facilities, including: 1) meat and fat residue left on equipment and walls; 2) dripping condensation contaminating food; 3) mold growth near production areas; and 4) insect infestations in processing rooms. Shockingly, in May 2024, a USDA inspector documented what was simply described as "general filth" in a room at the Indiana plant—an understated yet damning indictment of Boar's Head's ongoing and systemic food safety and cleanliness failures, and eerily reminiscent of the 1906 Reynold-Neill Report.[11]

25. For example, over 300 pages of USDA non-compliance reports[12] revealed the following unsavory conditions with inspectors documented numerous ongoing unsanitary conditions at Boar's Head's Forrest City, Arkansas, meat production facility, including (non-exhaustive list, see attached Exhibits A, B, and C for further detail):

(a) April 17, 2023: An inspector observed "a cart labeled chipotle/teriyaki with open supplies gloves, armguards, etc. parked next to a gondola filled with *overflowing trash*" Ex. A at 80. (Emphasis added).

(b) June 28, 2023: An inspector "observed condensation drip off the white piping connected to the unit and land on a rack of exposed product." Ex. A at 83.

(c) September 25, 2024: "[I observed] a piece of black/brown flaking residue hanging loosely from tree [meat] rack #436. Upon closer inspection, I observed several areas of this residue flaking along the underside of the frame where the rack shelfs are placed, some of the residue appeared dry and flaking, other areas had a wet appearance that felt sticky when rubbed

---

[10] *Id.*
[11] *Id.*
[12] Attached as Exhibits A, B, and C.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1    with my hand. [. . .] When Mr. [omitted] arrived, I informed and shown

2    him my observed thus far, I asked Mr. [omitted] if he knew what the

3    residue was on tree rack #436, Mr. [omitted] said he was not sure. [. . .] As

4    the product was being removed from the rack, I was able to observe the

5    conditions of the rack shelfs better. I observed on the second shelf from the

6    top, a small circular spot directly on the shelf wires with the same black

7    residue appearance observed on the frame. Then, on the third shelf from

8    the bottom, I observed another area of black residue directly on the shelf

9    wires." Ex. A at 118-19.

10    26.    Inspectors documented numerous ongoing unsanitary conditions at Boar's Head's

11    New Castle, Indiana, meat production facility, including:

(a)    November 20, 2023: "The north walls in the Oil and GEA browning rooms
were also observed to have *peeling paint.* Numerous conduit brackets
throughout the Oil and GEA rooms were observed to have *flaking rust and
breaking rubberized coating. The observed creates an insanitary condition
and could result in the adulteration of the exposed product being produced
in the rooms.*" Ex. B at 55. (Emphasis added).

(b)    February 23, 2024: "A *piece of wood was being used to keep the door open,
leaving a gap of approximately 1.5 inches wide allowing the entrance of
pests.*" Ex. B at 59. (Emphasis added).

(c)    May 12, 2024: "On the underside of the blue inspection belt there was
*protein from the previous day's productions* in the following places- protein
was on the silver lift bars, the rollers and on the blue belt. I also observed
blue specks from the belt itself on one of the silver lift bars. *I stopped my
inspection to allow the sanitation team to reclean the room* and I informed
[omitted] that a noncompliance was being issued and that *I would reinspect
the room. Upon reinspection I found the following issues with the incline
belt. There was left over protein on 3 areas of the rollers on the underside*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

8

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

*of the belt in several areas.* In the pump rooms staging areas I found the following noncompliances. ***The entry door has some type of white tape that was ripped/torn and collecting dirt. The door had leftover over splash protein and blood on the door*** causing insanitary conditions. The ***bottom of the door silver kick plate was coming loose from the door allowing dirt and grime in between the plate and the door. The door frame was also separating from the wall. The walls behind the gloves had left of protein, dirt, blood and general grime*** on it. ***The lids of the totes that had the gloves and other PPE items were filthy with protein and general dirt and grime on them. The computer workstations had dirt, grime, dried protein and general filth on them as well. The floors in between the pump rooms had protein, dirt, grim and general trash on the floor.***" Ex. B at 61. (Emphasis added).

27.    Inspectors documented numerous ongoing unsanitary conditions at the Boar's Head's Petersburg, Virginia, meat production facility, including:

(a)    February 25, 2021: "In the Raw Holding Cooler, I observed one ***deceased black fly carcass*** sitting on a pipe cap located in the gray wall to the right of the Trash Compacter Room roll-up door. The innermost door was sealed properly, however the surrounding ***wall and immediate floor were littered with various dried meat pieces and grime.***" Ex. C at 30.  (Emphasis added).

(b)    July 26, 2024: "While observing the Spice Room, I found ***mold embedded into the caulking perimeter of the wall starting behind pickle tanks #2-#4 all the way around to the right wall entrance way. There was also a black and brownish substance that appeared to be wet,*** located behind the monitors and on the concrete section of the wall." Ex. C at 104. (Emphasis added).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

1   (c)   September 3, 2024: "In the Ham Pack [omitted] department, the Emergency

2        Exit Door was found to have *a cobweb holding a dead spider in between*

3        *the door and doorframe.*" Ex. C, p. 107. (Emphasis added).

4   (d)   September 25, 2024: "I observed the following findings in the Ham Pack

5        department: A small (approx. 0.25") piece of *meat residue was seen on the*

6        *underside of the C1 conveyor belt. A paper towel dispenser was found to*

7        *have dried meat residue on its outer surface. A [omitted] was found to have*

8        *a small (approx. 0.25") piece of meat residue on its non-food contact*

9        *surface. A ceiling plug was found to have dried, flaking meat residue on*

10       *its food contact surface. The [omitted] was found to have a piece of meat*

11       *from previous production, approximately 1" in length, on the exit side of*

12       *the machine on a non-food contact surface.* QA Manager [omitted] was

13       verbally notified [. . .] A similar incident occurred on September 23, 2024."

14       Ex. C at 121-22. (Emphasis added).

15       28.   These inspections revealed widespread, systemic sanitation failures, directly

16   contradicting Boar's Head's marketed image as a premium food supplier committed to safety. For

17   years, Boar's Head concealed extensive filth and contamination across its plants, allowing meat

18   and fat residue to coat equipment, walls, and floors while leaving "dark, stinky residue" from

19   previous production cycles on machinery and conveyor belts. Inspectors documented green mold

20   growing on food processing equipment, ceilings, and storage areas, along with pest infestations,

21   including flies, cockroaches, crickets, beetles, and ants trailing into production rooms. These

22   facilities were further plagued by dripping condensation contaminating food and machinery,

23   standing water mixed with blood, trash, and debris near meat processing stations, and "unidentified

24   slime" oozing near food preparation areas. Structural deficiencies compounded the risk, with rusted

25   and peeling metal surfaces in food prep areas, chipping paint, exposed insulation, torn rubber seals

26   on food machines, and unsecured doors that allowed insect and rodent entry.

27       29.   Despite repeated violations, Boar's Head failed to take effective corrective action,

28   leaving its facilities in blatantly unsanitary conditions well beyond any reasonable standard. These

facts expose Boar's Head's false and misleading representations about its food safety practices and demonstrate a reckless disregard for consumer health. Had consumers known the truth, they would never have purchased Boar's Head products produced at these facilities.

30.    Government inspections repeatedly documented filth-ridden conditions, contaminated meat, mold, pest presence, and violations of federal food safety regulations across multiple Boar's Head plants for years—yet Boar's Head took no meaningful corrective action. Instead, the company knowingly allowed these hazards to persist while continuing to falsely market its products as meeting the highest standards of quality and safety. The extent, severity, and duration of these violations make clear that they were not only known to employees and managers, but also to the highest levels of Boar's Head's corporate leadership.

31.    The duration and consistency of these violations demonstrate not only ratification of these unlawful practices from the top, but also affirmative intent to prioritize profits over investing in proper sanitation, consumer safety, and compliance measures. Boar's Head knowingly concealed its widespread and dangerous sanitation failures from the public, all while falsely marketing its products as premium, high-quality, and produced under the strictest sanitary standards. This deliberate omission was not accidental—it was a calculated scheme to cut costs, maximize profits, and exploit its trusted reputation while selling contaminated, worthless food products at double standard prices.

32.    Plaintiffs relied on Boar's Head's deceptive marketing and material omissions when purchasing its products. Before their purchase, Plaintiffs reviewed the packaging and labeling and relied on Defendant's explicit representations that Boar's Head never compromised safety, sanitation or on ingredients, as it claimed in its "Compromise Elsewhere," slogan. They also relied on the food's packaging, which omitted the fact of systemic unsanitary conditions and contamination in the preparation process at Boar's Head facilities.

33.    However, Boar's Head deliberately omitted critical material facts about the unsanitary and unsafe conditions under which its food products were produced because they directly contradicted its carefully crafted image of quality. Had Plaintiffs known the truth that the product was manufactured in filthy, contaminated facilities failing to meet basic health and safety

11

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

standards, they would not have purchased it. Boar's Head's misleading omissions deprived Plaintiffs of the ability to make an informed purchasing decision and fraudulently induced them into paying premium prices for products that did not meet the standard promised. This material omission was deliberate and uniform across all product labels, marketing and marketing, public statements, and media and advertising channels, ensuring that consumers were never informed of the unsanitary conditions in which Boar's Head products were made.

34.     Had Plaintiffs known that the Boar's Head products they purchased and consumed were contaminated—or at risk of contamination—with, for example, mold, bacteria, insects, or vermin, they would have never bought them. They relied on Defendant's representations of quality and safety and would not have paid a price premium for products that were produced in unsanitary conditions.

35.     Plaintiffs suffered economic injury when they spent money to purchase Boar's Head products that they would not have otherwise purchased absent Defendant's misconduct. Members of the putative class have likewise suffered economic injuries by purchasing Boar's Head products they otherwise would have avoided or paid significantly less for had Defendant not concealed the truth about its unsanitary production conditions.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action on their own behalf and pursuant to California Code of Civil Procedure § 382. Plaintiffs intend to seek certification of the following class (the "Class"):

> All persons in California who purchased any Boar's Head product originating from plants in Forrest City, Arkansas, New Castle, Indiana, and Petersburg, Virginia from the time beginning three years before this Complaint is filed until the resolution of this litigation.

37.     Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

38.     **Numerosity and Ascertainability**: Plaintiffs do not know the exact number of members of the putative class. Due to Plaintiff's initial investigation, however, Plaintiffs are informed and believe that the total number of Class members is at least in the tens of thousands and that members of the Class are numerous and geographically dispersed throughout California.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

1    While the exact number and identities of the Class members are unknown at this time, such

2    information can be ascertained through appropriate investigation and discovery, including

3    Defendant's records, either manually or through computerized searches.

4    39.    **Typicality and Adequacy**: Plaintiffs' claims are typical of those of the proposed

5    Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed

6    Class. Plaintiffs do not have any interests that are antagonistic to those of the proposed Class.

7    Plaintiffs have retained counsel competent and experienced in the prosecution of this type of

8    litigation.

9    40.    **Commonality**: The questions of law and fact common to the Class members, some

10    of which are set out below, predominate over any questions affecting only individual Class

11    members:

12    (a)    Whether Defendant engaged in the alleged misconduct in a uniform manner

13    toward all consumers who purchased Boar's Head products;

14    (b)    Whether Defendant's conduct constitutes unfair, fraudulent, or unlawful

15    business practices in the advertising, marketing, and sale of Boar's Head

16    products;

17    (c)    Whether Defendant made false or misleading statements and omissions to

18    the Class and the public about how Boar's Head products were made;

19    (d)    Whether Defendant's false and misleading statements and omissions were

20    likely to deceive the public;

21    (e)    Whether Plaintiffs and the Class are entitled to monetary damages under the

22    same legal claims asserted by other Class members;

23    (f)    Whether Boar's Head products are adulterated and/or misbranded under

24    California or federal law;

25    (g)    Whether Defendant knew or should have known that its representations were

26    false or misleading;

27    (h)    Whether Defendant's omissions about Boar's Head products were material

28    to a reasonable consumer's purchasing decision;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

13

(i)     Whether Defendant knowingly concealed or misrepresented material facts to induce consumers into purchasing Boar's Head products;

(j)     Whether Defendant's representations, omissions, and concealments regarding Boar's Head products were likely to deceive consumers;

(k)     Whether Defendant's representations and omissions violated California or federal law;

(l)     Whether Defendant's misleading statements and omissions enabled it to charge a price premium for Boar's Head products;

(m)    Whether Defendant should be permanently enjoined from making the deceptive claims at issue;

(n)     Whether Plaintiffs and the Class are entitled to a full refund, restitution, or other monetary and injunctive relief.

41.    **Predominance and Superiority**: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)     given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1    and absent Class members have no substantial interest in individually

2    controlling the prosecution of individual actions;

3    (b)    when Defendant's liability has been adjudicated, claims of all Class

4    members can be determined by the Court;

5    (c)    this action will cause an orderly and expeditious administration of the Class

6    claims and foster economies of time, effort and expense, and ensure

7    uniformity of decisions; and

8    (d)    without a class action, many Class members would continue to suffer injury,

9    and Defendant's violations of law will continue without redress while

10    Defendant continues to reap and retain the substantial proceeds of their

11    wrongful conduct.

12    42.    **Manageability**: The trial and litigation of Plaintiff's and the proposed Class claims

13    are manageable. Defendant has acted on grounds generally applicable to the Class, making

14    appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

15    **FIRST CAUSE OF ACTION**

16    (Intentional Misrepresentation)

17    43.    Plaintiffs reincorporate and reallege each of the prior paragraphs.

18    44.    Boar's Head represented to Plaintiffs and Class members that their products were

19    made under sanitary conditions that meet legal requirements and that Boar's Head products were

20    safe, healthy, and made without compromise in safety, sanitation, or ingredients.

21    45.    Boar's Head's representation was false because Boar's Head deliberately omitted

22    critical material fact that its food products were manufactured in unsanitary, unsafe, filthy,

23    contaminated facilities failing to meet basic health and safety standards.

24    46.    Reasonable consumers purchase Boar's Head products because they believe they

25    are safe to eat and made in conditions that meet legal standards. Particularly, consumers purchase

26    Boar's Head products because they are marketed as premium, high-quality, and made under the

27    strictest safety and sanitation standards.

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

47.     Defendant manufactures the Boar's Head products for the express purpose of making sales. Product labeling plays an important role in the consumer purchase decision process for merchandise sold at mass merchandisers such as health foods stores and supermarkets.

48.     Defendant represented to Plaintiffs and the Class members that its products were premium, high-quality, and made under the strictest safety and sanitation standards. Through marketing, packaging, and public statements, Boar's Head deceptively assured consumers that its meats were carefully crafted, free from compromise, and superior to competitors, using slogans like "Compromise Elsewhere" to reinforce these claims.

49.     These statements would lead a reasonable person to conclude that the products were not exposed to contamination, including mold, bacteria, insects, and vermin, in the manufacturing process.

50.     Because Defendant's products were exposed to contamination in the manufacturing process, reasonable consumers are misled and deceived by Defendant's marketing. Boar's Head deliberately concealed the truth—that its products were manufactured in unsanitary conditions plagued by mold, insect infestations, dripping condensation, and contaminated equipment. By knowingly omitting these material facts, Boar's Head misled consumers into paying premium prices for products they would not have purchased had they known the truth.

51.     Boar's Head knew that its representations were false when it made them, and it made the representations recklessly and without regard for its truth.

52.     Plaintiffs and the Class members reasonably relied on the representations to purchase the Boar's Head products at the premium price charged.

53.     As a result, Plaintiffs and the Class members were harmed when they purchased the products. Plaintiffs and the Class members paid for a product that they would not otherwise have purchased or paid more than they would have had they known the truth.

54.     Plaintiffs and the Class members' reliance on Defendant's representations was a substantial factor in causing this harm. Had Plaintiffs and the Class members known that it had the products were manufactured in an environment exposed to contaminants, they would not have purchased the products.

16

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

55.     As a direct and proximate result of Defendant's intentional misrepresentation, Plaintiffs and the Class members have suffered injury and are entitled to damages in an amount to be proven at trial but more than the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

(Negligent Misrepresentation)

56.     Plaintiffs reincorporate and reallege each of the prior paragraphs.

57.     Defendant represented to Plaintiffs and Class members that its products were safe, healthy, and made without compromise in safety, sanitation, or ingredients, as reinforced by its slogan, "Compromise Elsewhere." Plaintiffs also relied on the food's packaging, which omitted the fact of systemic unsanitary conditions and contamination in the preparation process at Boar's Head facilities.

58.     This statement would lead a reasonable person to conclude that the products were manufactured in an environment free from contamination—or at risk of contamination—with mold, bacteria, insects, or vermin.

59.     However, Boar's Head deliberately omitted critical material fact that its food products were manufactured in unsanitary, unsafe, filthy, contaminated facilities failing to meet basic health and safety standards.

60.     Defendant had a duty to disclose the unsanitary and unsafe conditions under which it produced food. By virtue of selling to Plaintiffs, a transactional relationship existed between Plaintiffs and Defendant. Defendant had exclusive knowledge of the material facts of its contaminated facilities that failed to meet basic health and safety standards. Plaintiffs did not know or had no way of knowing the material fact at the time of purchase. Defendant's active concealment of the material fact from Plaintiffs, including but not limited to affirmative representations in marketing materials that the products were produced in sanitary conditions and free from contamination, created an additional duty to disclose the material fact. Had Plaintiffs known the material fact, they would have acted differently by not purchasing Boar's Head products.

61.     These representations were false. The USDA inspection reports prove Boar's Head products were manufactured in contaminated, unsanitary environments. Defendant had no

17

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

1  reasonable grounds for believing its products were safe, healthy, and made without compromise in

2  safety, sanitation, or ingredients.

3      62.    Defendant intended that Plaintiffs and the Class members rely on the

4  representations. The false and misleading advertisements were placed on product packaging and

5  on the product itself for the sole purpose of inducing customers to purchase the products. Defendant

6  understood, or should have understood, that a reasonable person would believe that products

7  marketed were safe, healthy, and made without compromise in safety, sanitation, or ingredients.

8      63.    Plaintiffs and the Class members reasonably relied on the representations, and based

9  on that belief, and because of it, Plaintiffs and the Class members purchased the products.

10     64.    As a result, Plaintiffs and the Class members were harmed when they purchased the

11  Boar's Head food products that failed to meet the brand's high standards of quality, care in

12  preparation, sanitation and food safety, as the products were contaminated, unsafe, not fit for

13  consumption, low-quality, and exposed them to unnecessary health risks. Plaintiffs and the Class

14  members paid for products that they would not otherwise have purchased had they known the

15  conditions in which they were prepared.

16     65.    Plaintiffs and the Class members' reliance on Defendant's representations was a

17  substantial factor in causing this harm. Had Plaintiffs and the Class members known that the truth,

18  Plaintiffs and the Class members would not have purchased the Boar's Head products.

19     66.    As a direct and proximate result of Defendant's negligent misrepresentation,

20  Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be

21  proven at trial but more than the minimum jurisdictional requirement of this Court.

22                          **THIRD CAUSE OF ACTION**

23      (Violation of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et. seq.)

24     67.    Plaintiffs reincorporate and reallege each of the prior paragraphs.

25     68.    Defendant is a business that made false statements to Plaintiffs and Class members

26  that its products were safe, healthy, and made without compromise in safety, sanitation, or

27  ingredients, as reinforced by its slogan, "Compromise Elsewhere" and food product packaging,

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

18

which omitted the fact of systemic unsanitary conditions and contamination in the preparation process at Boar's Head facilities.

69.     USDA inspections uncovered widespread and egregious violations at multiple Boar's Head facilities, exposing filthy and unsanitary conditions that directly contradict the company's marketed image of quality and safety. Inspectors documented meat and fat residue coating equipment and walls, dripping condensation contaminating food, green mold growing in production areas, and insect infestations—including flies, cockroaches, and beetles—throughout the facilities. Additionally, there was debris near food processing stations, rusted and peeling metal on equipment, chipping paint falling into production areas, and structural failures that allowed vermin entry. These violations, which persisted for years despite repeated citations, demonstrate Boar's Head's reckless disregard for basic health and safety standards while continuing to mislead consumers into paying premium prices for contaminated and substandard products. Thus, Defendant's statements to California residents, made on product labels, packaging, and in other marketing and advertising, were false. Defendant knew or should have known the statements were false at the time it made them.

70.     The statements deceived and had the potential to deceive a substantial portion of consumers to induce them to purchase Boar's Head products and induce them to pay higher prices for Boar's Head products. Boar's Head made the false statements and material omissions to extract higher profits from misled consumers.

71.     Plaintiffs and the Class members relied on the advertisements and material omissions by purchasing the products. These representations and omissions were material to Plaintiffs and the Class members' decisions to purchase Boar's Head products and at the premium price Boar's Head charged. Had Plaintiffs and Class members known the truth, they would have behaved differently and not purchased Boar's Head products or would have paid significantly less for them.

72.     As a result, Plaintiffs and the Class members were damaged. Plaintiffs and the Class members did not receive the benefits of their bargains. Plaintiffs and the Class members paid for products that they would not have purchased or paid substantially less had they known the truth.

19

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

73.    Plaintiffs and the Class members suffered monetary injury in fact as a direct and proximate result of the violations of the False Advertising Law committed by Defendant as alleged herein in an amount to be proven at trial but more than the minimum jurisdictional amount of this Court.

### FOURTH CAUSE OF ACTION

(Violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.)

74.    Plaintiffs reincorporate and reallege each of the prior paragraphs.

75.    Plaintiffs bring this cause of action on behalf of themselves, the public, and on behalf of the Class members against all Defendants for their unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business & Professions Code section 17200 et seq. ("UCL") which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

76.    Plaintiffs assert these claims on behalf of themselves, the public, and similarly situated individuals who have expended funds that the Defendant should be required to pay or reimburse under the restitutionary remedy provided by California Business & Professions Code § 17200, et seq.

77.    Plaintiffs and Class members were consumers who purchased Boar's Head products. During the transaction, in each case, Defendant uniformly failed to disclose and omitted material information that was known only to themselves and that could not reasonably have been discovered by Plaintiffs and Class members as set forth in the preceding counts.

78.    Based on the material omissions and Defendant's partially true statements and failures to disclose as alleged herein, Plaintiffs and Class members purchased Boar's Head products and have been actually harmed.

79.    As a direct and proximate result of Defendant's false advertising, Defendant intended that Plaintiffs and Class members would be misled into believing that the Boar's Head products were premium, high-quality, and made under the strictest safety and sanitation standards, and deceptively assured consumers that its food products were carefully crafted, free from compromise, and superior to competitors'.

20

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

80. By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business & Professions Code§§ 17200, et seq.

81. Defendant's misconduct, as alleged herein, gave them an unfair competitive advantage over competitors that did not engage in the same unlawful and unfair practices.

82. <u>Unlawful</u>: The unlawful acts and practices of Defendants alleged above constitutes unlawful business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, et seq. Defendant's unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations—federal and/or state, statutory and/or common law— and said predicate acts are therefore per se violations of§ 17200, et seq. These predicate unlawful business acts and/or practices include, but are not limited to, the following: Fraud–Omissions, Negligent Misrepresentation, Breach of Express Warranty, Breach of Implied Warranty, the Consumers Legal Remedies Act, and other statutory and common law in effect.

83. <u>Unfair</u>: Defendant's omissions and misconduct as alleged in this action constitutes negligence and other tortious conduct and this misconduct gave Defendants an unfair competitive advantage over their competitors. Defendants misconduct as alleged in the material omissions and otherwise herein caused Plaintiffs and Class members substantial injury by causing a resulting loss of money because Defendants failed to disclose and/or omitted material information that the Boar's Head products were manufactured in unsanitary conditions plagued by mold, insect infestations, dripping condensation, and contaminated equipment. Defendant provided no countervailing benefit to consumers or to competition by concealing this fact that could possibly outweigh this substantial injury and caused injury that could not have been avoided or even discovered by Plaintiffs and Class members, because it resulted from Defendant's failure to disclose and/or omission of material information that only Defendant knew or could have known.

84. Defendant's misconduct as alleged herein gave Defendants an unfair competitive advantage over competitors that did not engage in the same unlawful and unfair practices.

85. The harm to Plaintiffs, members of the public, and Class members outweighs the utility if any, of Defendant's policies, acts and/or practices, and consequently Defendant's conduct

21

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1    herein constitutes an unfair business act or practice within the meaning of California Business &

2    Professions Code §§ 17200, et seq.

3        86.    <u>Fraudulent</u>: Using its omissions and/or acts, practices and non-disclosures as alleged

4    herein, Defendants published the public-facing information about the Boar's Head products in to

5    deceive the public through the material omissions that its products were manufactured in unsanitary

6    conditions plagued by mold, insect infestations, dripping condensation, and contaminated

7    equipment, causing consumer confusion. Such omissions, acts, practices and non-disclosures as

8    alleged herein constitute fraudulent business acts and/or practices within the meaning of California

9    Business & Professions Code §§ 17200, et seq.

10       87.    Defendant's conduct, as fully described herein, was designed to deceive, and was

11   therefore likely to deceive, Plaintiffs and members of the consuming public, and Defendant's

12   failures to disclose and their omission of material facts have been and continue to be unfair,

13   fraudulent, untrue and/or deceptive.

14       88.    As a direct and proximate result of such omissions, acts and practices, Defendants

15   received monies and continue to hold the monies expended by Plaintiffs and Class members

16   similarly situated who purchased Boar's Head products as described herein.

17       89.    Regardless of Defendant's representations to the contrary, such unfair, deceptive

18   and/or fraudulent business practices present a continuing threat to members of the public to be

19   misled and/or deceived by Defendant's material omissions. Plaintiffs and other members of the

20   public have no other remedy of law that will prevent Defendant's misconduct as alleged herein

21   from occurring and/or reoccurring in the future.

22       90.    As a direct and proximate result of Defendant's unfair and/or fraudulent conduct

23   alleged herein, Plaintiffs and Class members have lost money. Plaintiffs and Class members are

24   direct victims of Defendant's unlawful conduct, and each has suffered injury in fact, and has lost

25   money or property as a result of Defendant's unfair competition.

26

27

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

22

**FIFTH CAUSE OF ACTION**

(Breach of Express Warranty)

91.    Plaintiffs reincorporate and reallege each of the prior paragraphs.

92.    Defendant expressly warranted through advertising, marketing materials, and product labeling that its products were premium, high-quality, and made under the strictest safety and sanitation standards. Defendant warranted: "Our facilities undergo scrupulous daily cleaning and sanitation processes, with hours each day dedicated to a top-to-bottom cleanup and sanitation of our manufacturing equipment, surfaces and plant environments."[13]

93.    Plaintiffs relied on these express representations and warranties in purchasing the products.

94.    Contrary to Defendant's express warranties, the products did not conform to the advertised representations. Specifically, the products were made in facilities riddled with contamination, filth, and blatant health violations.

95.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs suffered damages, including but not limited to financial loss and inconvenience.

**SIXTH CAUSE OF ACTION**

(California Civil Code § 1770(a)(5) "California Consumer Legal Remedies Act")

96.    Plaintiffs reincorporate and reallege each of the prior paragraphs.

97.    Defendant's conduct constitutes unfair or deceptive acts or practices in violation of the California Civil Code § 1770(a)(5) ("CLRA"), which prohibits representing that goods have characteristics, uses, or benefits which they do not have.

98.    Defendant's actions were intended to and did result in the sale of the Boar's Head products to Plaintiffs and other consumers under false pretenses.

99.    Plaintiffs and Class members acquired by purchase Boar's Head products for consumption.

---

[13] Boar's Head, *Food Safety: Clean & Safe Facilities Maintaining Rigorous Sanitation Practices,* (Accessed February 13, 2024), https://boarshead.com/food-safety.

23

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1    100.   Concurrent with the filing of this Complaint, Plaintiffs have sent a letter to

2  Defendant placing them on notice of the CLRA violation.

3    101.   Plaintiffs intend to amend their Complaint to confirm that Defendant's conduct

4  remains in violation of the CLRA if Defendant does not rectify its conduct with regard to the

5  contaminated Boar's Head products within 30 days.

6    102.   As a direct and proximate result of Defendant's conduct, Plaintiffs suffered

7  damages, including but not limited to financial loss and inconvenience.

8

9  **PRAYER FOR RELIEF**

10  WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray

11  for judgment against the Defendant as to each and every count, including:

12    A.   An order declaring this action to be a proper class action, appointing Plaintiffs and

13  their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

14    B.   An order enjoining Defendant from selling the relevant products;

15    C.   An order enjoining Defendant from suggesting or implying that the relevant

16  products are premium or safe;

17    D.   An order requiring Defendant to engage in a corrective advertising campaign and

18  engage in any further necessary affirmative injunctive relief;

19    E.   An order awarding declaratory relief, and any further retrospective or prospective

20  injunctive relief permitted by law or equity, including enjoining Defendant from continuing the

21  unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

22    F.   An order requiring Defendant to pay restitution to restore all funds acquired by

23  means of any act or practice declared by this Court to be an unlawful or unfair business act or

24  practice, untrue or misleading advertising, or a violation of the Unfair Competition Law or other

25  California law, plus pre- and post-judgment interest thereon;

26    G.   An order requiring Defendant to disgorge or return all monies, revenues, and profits

27  obtained by means of any wrongful or unlawful act or practice;

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order awarding attorneys' fees and costs to Plaintiffs and the Class; and

J.      An order providing for all other such equitable relief as may be just and proper.

Respectfully submitted,

Dated: February 13, 2025          **WILSHIRE LAW FIRM, PLC**

By: 

Thiago M. Coelho
Chumahan B. Bowen
Jennifer M. Leinbach
Reuben Aguirre

*Attorneys for Plaintiffs and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all causes of action triable by jury.

Dated: February 13, 2025          **WILSHIRE LAW FIRM, PLC**

By: 

Thiago M. Coelho
Chumahan B. Bowen
Jennifer M. Leinbach
Reuben Aguirre

*Attorneys for Plaintiffs and the Proposed Class*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137