1    BROWNSTEIN HYATT FARBER SCHRECK, LLP
     Jonathan C. Sandler, Bar No. 227532
2    jsandler@bhfs.com
     2029 Century Park East, Suite 950
3    Los Angeles, California 90067-2918
     Telephone: 310.500.4600
4    Facsimile: 310.500.4602

5    Attorneys for Defendant
     BOAR'S HEAD PROVISIONS CO., INC.

6

7

8            UNITED STATES DISTRICT COURT

9         SOUTHERN DISTRICT OF CALIFORNIA

10

11   SHARYN BUKSBAUM, JANINE     Case No. 3:25-cv-597-RSH-BLM
    SABELLA, DEBORAH THAYER,
12   DIESHA HODGES, California       **DEFENDANT BOAR'S HEAD**
    residents, individually, and on behalf of   **PROVISIONS CO., INC.'S**
13   all others similarly situated,        **NOTICE OF MOTION AND**
                            **MOTION TO DISMISS SECOND**
14           Plaintiffs,          **AMENDED CLASS ACTION**
                            **COMPLAINT PURSUANT TO**
15         v.                 **F.R.C.P. 12(b)(1) AND 12(b)(6)**
                            **AND/OR TO STRIKE**
16   BOAR'S HEAD PROVISIONS CO.,    **PURSUANT TO F.R.C.P 12(f);**
    INC., DOES 1 to 10, inclusive,      **MEMORANDUM OF POINTS**
17                         **AND AUTHORITIES IN**
          Defendants.        **SUPPORT THEREOF**
18
                            [*Filed concurrently with the*
19                          *[Proposed] Order*]

20                        NO ORAL ARGUMENT UNLESS
                        SEPARATELY ORDERED BY THE
21                        COURT

22                        Date:      November 10, 2025
                       Judge:    Hon. Robert S. Huie
23

24   TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN

25   DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS AND THEIR

26   ATTORNEYS OF RECORD:

27        PLEASE TAKE NOTICE THAT Defendant BOAR'S HEAD PROVISIONS

28   CO., INC. ("Boar's Head" and/or "Defendant"), through its undersigned counsel,

*Left margin vertical text:* BROWNSTEIN HYATT FARBER SCHRECK, LLP — Attorneys at Law — 2029 Century Park East, Suite 950 — Los Angeles, CA 90067-2918

1    will move to dismiss and/or strike the claims asserted by Plaintiffs SHARYN

2    BUKSBAUM, JANINE SABELLA, DEBORAH THAYER, DIESHA HODGES,

3    California residents, individually, and on behalf of all others similarly situated

4    ("Plaintiffs"). The motion date for this motion is November 10, 2025.

5        Defendant's Motion is brought under Federal Rules of Civil Procedure

6    ("FRCP") 12(b)(1) and (6) on the grounds that Plaintiffs lack standing and/or failed

7    to state claims for which relief may be granted in their Second Amended Class Action

8    Complaint ("SAC"). In the alternative, Defendant seeks to strike certain

9    claims/allegations pursuant to FRCP 12(f), including on the ground that they have

10   already been adjudicated in Defendant's favor. This Motion is based upon the

11   accompanying Memorandum of Points and Authorities, Declaration of G. Ben

12   Dalman, the documentation on file, and such other argument of counsel as the Court

13   may order.

14       This Motion is made following the conference of Plaintiffs' counsel

15   Chumahan Bowen and Boar's Head's counsel Jonathan Sandler which took place on

16   September 19, 2025.

17                                        Respectfully submitted,

18   Dated: October 6, 2025              BROWNSTEIN HYATT FARBER

19                                        SCHRECK, LLP

20

21                                        By: /s/ Jonathan C. Sandler

22                                            Jonathan C. Sandler
                                             Attorneys for Defendant
23                                           BOAR'S HEAD PROVISIONS
                                             CO., INC.

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

- 2 -

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.  Boar's Head And The Applicable Regulatory Scheme ......................... 3

    B.  The July 2024 Recall And Class Action Settlement ............................. 5

    C.  The Claims In This Action .................................................................... 5

    D.  Procedural History ............................................................................... 6

III.  STANDARD OF REVIEW ............................................................................. 7

IV.  ARGUMENT .................................................................................................. 8

    A.  The Court Should Dismiss The SAC In Its Entirety ............................ 8

        1.  The SAC Fails to Allege Injury And Causation ......................... 8

        2.  The SAC Fails To Plead Consumer Deception ........................ 12

        3.  The Court Should Dismiss The SAC With Prejudice .............. 22

    B.  Additional Defects In The SAC Warrant Dismissing And/Or Striking Certain Claims .................................................................................... 23

        1.  Claims Based On Packaging/Labels And Unspecified Materials .................................................................................................. 23

        2.  CLRA Monetary Claim ............................................................ 23

        3.  Injunctive Relief ....................................................................... 24

V.  CONCLUSION ............................................................................................. 25

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 7, 9

*Barakezyan v. BMW of N. Am., LLC*,
No. CV 16-00173, 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016) ...................... 12

*Barrett v. Milwaukee Elec. Tool*,
No. 14cv1804, 2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) .......................... 16

*Baylor v. Honda Motor Co.*,
No. 2:23-cv-00794, 2024 WL 650415 (C.D. Cal. Jan. 19, 2024) ............... 18, 19

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ............................................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................... 7, 8, 19

*Bernstein v. Extendicare Health Servs., Inc.*,
607 F. Supp. 2d 1027 (D. Minn. 2009), *reconsideration denied*, 653
F. Supp. 2d 939 (D. Minn. 2009) ......................................................... 18

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............................................................ 8, 12

*Boysen v. Walgreen Co.*,
No. C 11-06262, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ................. 11, 12

*Coffelt v. Kroger Co.*,
No. EDCV 16-1471, 2018 WL 6004543 (C.D. Cal. Aug. 17, 2018)................ 12

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Servs. Inc.*,
911 F.2d 242 (9th Cir. 1990) .............................................................. 13

*DeNike v. Mathew Enter., Inc.*,
76 Cal. App. 5th 371 (Ct. App. 2022) ................................................... 24

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

35298631.2

*ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase*,
   553 F.3d 187 (2d Cir. 2009) ................................................................. 18

*Gonzales v. Nat. Factors Nutritional Prods.*,
   No. 2:24-cv-02584, 2024 WL 4609853 (C.D. Cal. June 28, 2024) .............. 7, 24

*Grassi v. Int'l Comfort Prods.*,
   No. 1:15-cv-00253, 2015 WL 4879410 (E.D. Cal. Aug. 15, 2015) .................. 16

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................. 22

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................. 22

*Jessani v. Monini N. Am., Inc.*,
   744 F. App'x 18 (2d Cir. 2018) ...................................................... 15, 16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................. 8

*Klaehn v. Cali Bamboo, LLC*,
   No. 19-CV-1498, 2021 WL 3044166 (S.D. Cal. June 14, 2021),
   *aff'd*, 2022 WL 1830685 (9th Cir. June 3, 2022) ..................................... 16

*Matilock, Inc. v. Pouladdej*,
   No. 20-cv-01186, 2020 WL 3187198 (N.D. Cal. June 15, 2020) ................... 10

*Meaunrit v. Pinnacle Foods Grp.*,
   No. C 09-04555, 2010 WL 1838715 (N.D. Cal. May 5, 2010) ................. 11, 12

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ...................................................... 13, 15, 16

*Nelson v. Campbell Soup Co.*,
   No. 14cv2647, 2015 WL 13534353 (S.D. Cal. May 18, 2015) ........................ 8

*Ong v. Chipotle Mexican Grill, Inc.*,
   294 F. Supp. 3d 199 (S.D.N.Y. 2018) ............................................... 18, 19

*Pels v. Keurig Dr. Pepper, Inc.*,
   No. 19-cv-03052, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2009) ..................... 12

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) .................................................... 8

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

- iii -

*In re Plum Baby Food Litig.*,
No. 4:21-CV-00913, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024),
*aff'd*, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) ............................... 21, 22

*Prescott v. Saraya USA, Inc.*,
No. 23-cv-00017, 2023 WL 6120610 (S.D. Cal. Sep. 18, 2023) ...................... 13

*Renavitz v. Boar's Head*,
No. 24-10155, 2025 WL 2506138 (D.N.J. Sep. 2, 2025) ............................... 16

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .......................................................... 8

*Sanchez v. Nurture, Inc.*,
No. 5:21-cv-08566, 2023 WL 6391487 (N.D. Cal. Sep. 29, 2023) ................... 17

*Sebastian v. Kimberly-Clark Corp.*,
No. 17cv442, 2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ........................... 24

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020) .......................................................... 8

*Silver v. BA Sports Nutrition, LLC*,
No. 20-cv-00633, 2020 WL 2992873 (N.D. Cal. June 4, 2020) ...................... 13

*Solis v. Coty, Inc.*,
No. 22-cv-0400, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ........................ 17

*Stuart v. Cadbury Adams USA, LLC*,
458 F. App'x 689 (9th Cir. 2011) ...................................................... 15

*In re Tobacco Cases II*,
No. SDSC 719446, 2002 WL 31628641 (Super. Ct., San Diego
Cty. Nov. 22, 2022), *aff'd*, 41 Cal. 4th 1257 (2007) ............................ 25

*Trammell v. KLN Enters., Inc.*,
No. 3:23-cv-01884, 2024 WL 4194794 (S.D. Cal. Sep. 12, 2024) ................... 8

*Vitt v. Apple Computer, Inc.*,
469 F. App'x 605 (9th Cir. 2012) ...................................................... 13

*Walker v. Nestle USA, Inc.*,
No. 3:19-cv-723, 2021 WL 1195983 (S.D. Cal. Mar. 30, 2021) ..................... 7

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

35298631.2

*Welk v. Beam Suntory Import*,
    124 F. Supp. 3d 1039 (S.D. Cal. 2015) ............................................ 16

*Zanelli v. Medtronic, Inc.*,
    No. SACV 23-2356, 2024 WL 3467792 (C.D. Cal. July 10, 2024) .................. 13

**Statutes and Rules**

9 CFR §300.2 ............................................................................ 4

9 CFR §§500.1-500.4 .................................................................... 4

21 U.S.C. §451 ......................................................................... 4

21 U.S.C. §455 ......................................................................... 4

21 U.S.C. §458 ...................................................................... 4, 25

21 U.S.C. §467e ..................................................................... 4, 25

21 U.S.C. §601 ......................................................................... 4

21 U.S.C. §606 ...................................................................... 4, 25

21 U.S.C. §678 ...................................................................... 4, 25

Cal. Civ. Code §1782 ............................................................. 23, 24

F.R.C.P. 9 ................................................... 1, 8, 9, 14, 17, 18, 20

F.R.C.P. 11 ........................................................................... 20

F.R.C.P. 12 ........................................................................ 7, 23

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

35298631.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

## I.    INTRODUCTION

Plaintiffs' SAC is yet another exercise in burden shifting and ill-defined theories in their attempt to circumvent the now judicially-approved nationwide consumer class settlement arising from the 2024 Boar's Head recall, which resulted from an outbreak of *Listeria monocytogenes* linked to liverwurst manufactured exclusively at Boar's Head's plant in Jarratt, Virginia. Unable to refute that the statements on which they rely for their claims relating to the company's generalized commitment to quality and safety are nonactionable puffery, the SAC conjures up a new theory: that the publicly-available reports ("NRs") from U.S. Department of Agriculture ("USDA"), Food Safety Inspection Service ("FSIS"), inspections of three other plants show that those plants use certain items of equipment. Yet, Boar's Head never represented that its deli meats are somehow created without the use of any equipment. The SAC fails for multiple reasons, especially under Rule 9(b)'s heightened pleading standard applicable to every claim.

As a threshold matter, for at least two reasons, Plaintiffs still have not identified the requisite concrete and particularized injury – let alone one caused by Boar's Head – necessary for standing. The Court does not need to go any further than the fact that, while Plaintiffs' claims are limited to products manufactured at three of Boar's Head's five plants, the SAC still suffers from the same defect that the Court noted in its prior Decision: the SAC does not muster anything but bare conclusions and rank speculation that the products Plaintiffs purchased even emanated from the three plants. In fact, the SAC effectively concedes that some Boar's Head brand products are not even manufactured by Boar's Head at all. Given that the SAC supports the equally possible inference that the products Plaintiffs purchased were manufactured at the two other plants or by copackers, Plaintiffs have not shown that they were "injured" under any theory.

In all events, Plaintiffs' amorphous claim of injury is wholly hypothetical,

including because Plaintiffs do not allege facts to link any condition referenced in any NR to any product purchased by any Plaintiff. The SAC does not allege facts to show that any condition in any NR: (i) existed at the time of manufacture of any of the products Plaintiffs purchased; (ii) related to the particular process used in the manufacture of any of the products Plaintiffs purchased; or (iii) otherwise affected the quality or safety of the products whatsoever. Even with respect to the SAC's new references to a few items of equipment, Plaintiffs do not allege if, or how, those items were used in the production of the products Plaintiffs purchased, let alone plausibly explain how the use of some equipment in the manufacture of deli meat somehow deprived Plaintiffs of their "bargain." In short, the SAC still offers no facts to support Plaintiffs' opportunistic money grab for refunds on non-recalled and non-adulterated products produced at plants that are not alleged to have ever had a recall or made anybody sick, and that at all times were inspected and approved by federal regulators.

The SAC should also be dismissed in full because the statements on which it relies are nonactionable and do not come close to meeting Plaintiffs' burden to plead consumer deception. The statements are puffery because they are vague, generalized statements about a commitment to quality and safety, which are not specific to any particular product or any particular process. Moreover, the SAC still does not allege, let alone with particularity, that the statements are false. The NRs are, in fact, fully consistent with a commitment to quality and safety in that they confirm that Boar's Head's plants are inspected by federal regulators on a daily basis with every perceived issue identified, and no facts are alleged to show that each issue was not promptly remediated by company personnel.

Nor do the SAC's vague references to "conveyor belts" and "racks" render false Boar's Head's general statement that there is also human involvement in the production process or Boar's Head's advice to consumers that the deli meats should not be left in the refrigerator for more than a few days because they are not highly processed. And Plaintiffs' new theory does not pass muster under the consumer

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

1  deception test, because no reasonable consumer of deli meats would assume that deli

2  meat is or could be prepared without the use of any equipment – let alone deli meat

3  sold by a large, national producer such as Boar's Head. And Boar's Head, of course,

4  never made such a representation.

5          For the foregoing reasons, the SAC should be dismissed in its entirety, with

6  prejudice. But even if the SAC could overcome those flaws (which it cannot),

7  additional aspects of the SAC are defective. Notwithstanding that the Court already

8  dismissed, without leave to replead, Plaintiffs' claims based on products and labels,

9  the SAC continues to assert such claims. The Court should dismiss and/or strike such

10  claims and allegations. Additionally, Plaintiffs, for the third time, violated the

11  statutory notice requirements applicable to their CLRA damages claim, and the law

12  is clear that Plaintiffs cannot circumvent this defect by disguising their damages

13  claim as restitution or disgorgement as they seek to do in the SAC. Finally, the SAC's

14  request for injunctive relief, including seeking to prevent Boar's Head from selling

15  products, is a meritless overreach. Plaintiffs lack standing for injunctive relief,

16  including because they cannot show any imminent, repeated purported "injury" since

17  NRs are publicly available information, allowing Plaintiffs to decide for themselves

18  if they wish to purchase Boar's Head products in the future. Plaintiffs' requested

19  injunctive relief is also preempted by federal statutes, as Plaintiffs are asking the

20  Court to shut down or alter the production process notwithstanding that the plants

21  and products are continuously inspected and approved by federal regulators.

22  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

23          **A.    Boar's Head And The Applicable Regulatory Scheme**

24          Boar's Head is a manufacturer of deli meat products. It owns five meat

25  processing plants in Jarratt, Virginia; Petersburg, Virginia; Forrest City, Arkansas;

26  New Castle, Indiana; and Holland, Michigan. ¶¶7, 52[1]; Declaration of G. Ben Dalman

27  ("Dalman Dec.") Ex. C. The SAC's claims pertain only to three of the five plants:

28  _____

[1] Unless otherwise indicated, references to "¶" are to paragraph numbers in the SAC.

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

Petersburg, Forrest City, and New Castle (the "Three Plants"). ¶72.

Boar's Head's meat processing plants, operations, products, and labels are subject to governmental inspection and approval requirements under the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §601 *et seq.* and Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §451 *et seq*. The FMIA and PPIA require that processing facilities be inspected by inspectors appointed by the Secretary of Agriculture. 21 U.S.C. §§606(a), 455. Moreover, for meat and poultry products to be sold commercially, they must be marked by the inspectors as "inspected and passed." *Id.* §§606(a), 458(a)(2). The statutes also require that labels be approved by the Secretary. *Id.* §§607(e), 457(d). The FMIA and PPIA contain express preemption provisions, prohibiting States from imposing additional or different requirements as to facilities, operations, or labeling. *Id.* §§678, 467e.

The implementing regulations delegate the inspection responsibilities to FSIS. 9 CFR §300.2(a). With respect to plant inspection:

> [FSIS] personnel perform thousands of inspection procedures in federally inspected establishments each day to determine whether or not they are in compliance with regulatory requirements. Each time inspection program personnel make a noncompliance determination, they complete a Noncompliance Report (NR). An NR is a written record that documents noncompliance with FSIS regulations. An NR notifies the establishment that there is a noncompliance and that they should take action to remedy the situation and prevent its recurrence.[2]

The regulations authorize FSIS to take enforcement action against the facility if NRs are not timely and properly remediated, including, *inter alia*, rejection of equipment or facilities, refusal to allow the marks of inspection to be applied to products, or a suspension of the facility. 9 CFR §§500.1-500.4. NRs and enforcement actions are publicly-available government documents. ¶54.[3] Other than the recall in

---

[2] USDA, FSIS, Quarterly Enforcement Reports (https://www.fsis.usda.gov/inspection/regulatory-enforcement/quarterly-enforcement-reports).

[3] USDA, FSIS, Freedom of Information Act (FOIA), Frequently Requested Records (https://www.fsis.usda.gov/about-fsis/freedom-information-act-foia/frequently-requested-records).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

35298631.2

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

July 2024 linked *exclusively* to the Jarratt plant, the SAC does not allege any FSIS enforcement action against Boar's Head nor any other product recall or contamination issue in the company's 120-year history.

### B.    The July 2024 Recall And Class Action Settlement

In July 2024, a *Listeria monocytogenes* outbreak was linked to Boar's Head liverwurst, which was manufactured exclusively in Jarratt. ¶52. Boar's Head initiated a recall, conducted in two phases in July 2024, encompassing products produced in Jarratt between May 10, 2024, and July 29, 2024. ¶52 n.6. On July 31, 2024, FSIS issued a suspension of the Jarratt plant. *Id*. The outbreak and recall resulted in bodily injury and class action lawsuits against Boar's Head. On August 13, 2025, the Southern District of New York approved a nationwide class settlement covering consumers who purchased products made at the Jarratt plant. ¶52.[4]

### C.    The Claims In This Action

Plaintiffs are four individuals who allege they purchased a variety of Boar's Head products before and after the recall. The SAC takes issue with certain statements on Boar's Head's website, which the SAC groups as "First Wave" statements (allegedly viewed before the recall)[5] and "Second Wave" statements (allegedly viewed after the recall)[6]. The SAC alleges that Plaintiff Thayer also

---

[4] *See Pompilio v. Boar's Head*, 7:24-cv-08220 (S.D.N.Y.).

[5] The First Wave statements are: "Skillfully hand trimmed and handcrafted," "Uncompromising quality means maximum results in your kitchen," "Since 1905, our standards of quality have never wavered," "We will continuously improve our time-honored traditional processes through the involvement of our dedicated employees," "Our standards for quality have never wavered," "The highest standards. . . We insist on the same unwavering commitment to quality we established over a century ago, standards mostly abandoned in a mass-produced world," "Each meets our highest standards of excellence," "No cutting corners, no compromises," "Products made to standards rarely found today," "Our standards for quality have never wavered—a value passed down from one family member to the next," "We choose to bring to market products that we believe in, products that meet the standards set for us long ago," and "Our products are not highly processed." ¶15.

[6] The Second Wave statements are: "Food safety is at the core of everything we do," "Strict food safety standards and protocols are embedded in our processes and procedures," "Production locations are Safe Quality Food (SQF)-certified meeting Global Food Safety Initiative Standards," "Facilities undergo scrupulous daily cleaning and sanitation processes," "Our commitment to the highest standards of sanitation is evidenced through stringent cleaning protocols, regular inspections, and

obtained a Boar's Head *Nutritional Facts & Recipes* booklet in or about April 2024.[7] Plaintiffs purport to represent a class of all Californias who purchased products originating from the Three Plants over the last three years. ¶72.

The basis for Plaintiffs' claims is that, on January 15, 2025, AP News published NRs it obtained via a FOIA request to the USDA with respect to the Three Plants, from January 2019 through September 2024. ¶54. No facts are alleged to plausibly show each NR was not timely and properly remediated. The SAC does not allege: any of the Three Plants was subject to any enforcement action; the number of NRs the Three Plants received exceeded those received by comparable plants in the industry; any of the Three Plants ever had a product contamination issue; or any product from any of the Three Plants made anybody sick.

The SAC relies on two theories of purported economic damage (both of which are meritless for a host of reasons discussed below). First, Plaintiffs assert that the NRs purportedly render deceptive Boar's Head's generalized statements relating to the quality of its products and its commitment to safety. The second theory, contrived for the first time in the SAC, is that the NRs reference certain equipment such as conveyor belts and racks, which Plaintiffs allege purportedly renders deceptive statements such as "hand trimmed and handcrafted" and "not highly processed."

### D. Procedural History

Plaintiffs commenced this case in San Diego Superior Court on February 13, 2025. Boar's Head timely removed and moved to dismiss. On April 10, 2025, Plaintiffs filed an amended complaint ("AC"). Boar's Head moved to dismiss the

---

advanced sanitation technologies," "Sanitation is a cornerstone of our food safety commitment," and "By embracing the latest advancements, we meet or exceed industry standards, reinforcing our commitment to delivering safe, high-quality products every step of the way." ¶18.

[7] The booklet statements at issue are: "No artificial ingredients, minimally processed," "All of our products are made with exceptional care and attention to quality," and "Since 1905, Boar's Head has been a family business. In the beginning, we had a very simple idea. Make the finest cold cuts possible. Nothing less. We still insist on the same unwavering commitment to those standards we established long ago." ¶32.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

AC, which the Court granted on August 1, 2025 ("Decision"). The Court dismissed, without leave to replead, Plaintiffs' claims premised on packages and labels, because the only alleged statement contained on same, "Compromise Elsewhere," is nonactionable puffery. Decision 9-11. The Court dismissed Plaintiffs' claims relating to website statements, with leave to replead, for failure to sufficiently plead reliance, information concerning the products allegedly purchased, and falsity (without reaching whether the statements are actionable). *Id.* 5-9. The Court also dismissed Plaintiffs' CLRA damages claim for failure to comply with the statutory notice requirements. *Id.* 12. On August 22, 2025, Plaintiffs filed the SAC, asserting causes of action for: (i) intentional misrepresentation; (ii) negligent misrepresentation; (iii) violation of California False Advertising Law; (iv) violation of California Unfair Competition Law; (v) breach of express warranty; and (vi) violation of CLRA.

## III.    STANDARD OF REVIEW

To establish Article III standing, a plaintiff "must sufficiently plead an (i) injury-in-fact, (ii) that is causally connected to [defendant's] challenged conduct, and (iii) is likely to be redressed by a favorable decision." *Gonzales v. Nat. Factors Nutritional Prods.*, 2024 WL 4609853, at *3 (C.D. Cal. June 28, 2024) (internal quotes omitted). "The alleged injury-in-fact must be: (i) concrete and particularized and (ii) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotes omitted). It is the plaintiff's burden to establish standing. *Id.*

Under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must assume the truth of factual allegations, "legal conclusions need not be taken as true merely because they are couched as factual allegations," and "unwarranted inferences are not sufficient to defeat a motion to dismiss." *Walker v. Nestle USA, Inc.*, 2021 WL 1195983, at *1 (S.D. Cal. Mar. 30, 2021). "Dismissal is warranted where the complaint lacks a cognizable legal theory,"

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

or "where it presents a cognizable legal theory, yet fails to plead essential facts under that theory." *Nelson v. Campbell Soup Co.*, 2015 WL 13534353, at *1 (S.D. Cal. May 18, 2015). Pleading the "possibility" of a violation is not enough; plaintiff must allege facts to show the "plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." "To meet this standard, Plaintiffs' complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotes omitted). Because Plaintiffs "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim," *i.e.*, alleging that Boar's Head made misrepresentations about products emanating from the Three Plants, the SAC "as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotes omitted). Thus, all of Plaintiffs' claims must be pleaded with particularity. *See* Decision 5-6; *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (UCL, FAL, CLRA, and negligent misrepresentation claims); *Trammell v. KLN Enters., Inc.*, 2024 WL 4194794, at *4 (S.D. Cal. Sep. 12, 2024) (CLRA and express warranty claims).

## IV.    **ARGUMENT**

### A.    **The Court Should Dismiss The SAC In Its Entirety**

The following defects apply to all of Plaintiffs' claims and therefore warrant dismissal of the SAC in its entirety, with prejudice.

#### 1.    The SAC Fails to Allege Injury And Causation

Plaintiffs have not pled facts to show a concrete and particularized injury, let alone caused by misconduct of Boar's Head, necessary for each of their claims. *See supra* 7; *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir. 2009); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020).

First, Plaintiffs' claims are limited to the Three Plants. ¶72. But Boar's Head

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

has two other plants (Dalman Dec. Ex. C), and some products sold under the Boar's Head brand are not manufactured by Boar's Head at all. The SAC does not refute these facts. Plaintiffs still have not alleged facts to show that the products they purchased were manufactured at the Three Plants as opposed to having been manufactured at other plants or by copackers. *See* Decision 7.

The SAC's allegations in this regard continue to be utterly conclusory, and certainly do not meet Rule 9(b)'s specificity requirement. The SAC lists a total of 23 products that Plaintiffs allegedly purchased at varying times, including salami, roast beef, ham, chicken, turkey, and cheese products. Plaintiffs baldly allege that "[t]he Products Plaintiff purchased were manufactured and processed at Defendant's facilities in Forrest City, Arkansas; New Castle, Indiana; and Petersburg, Virginia." ¶¶13, 22, 31, 39. Plaintiffs do not allege which product(s) allegedly came from which plant, and do not provide factual support for their improper guesswork that *all* of the listed products (or *any* of them) came from the Three Plants. At most, Plaintiffs repackage their conclusory allegation by asserting that the Three Plants "manufactured, processed and distributed" Boar's Head "deli turkey products," "deli chicken products," "deli turkey, ham, and chicken products," and "deli turkey and salami products." ¶¶13, 22, 31, 39. Those allegations again constitute "naked assertions devoice of further factual enhancement" that the Supreme Court has held are insufficient. *Iqbal*, 556 U.S. at 678 (internal quotes and brackets omitted). Moreover, even if the conclusory allegation that the Three Plants generally produce meat and poultry products were accepted as true, the allegation would still be insufficient because the SAC does not link any of the particular products Plaintiffs purchased to the Three Plants as opposed to the other two plants or copackers. Indeed, the SAC does not refute that the same types of products are also produced at the two other plants and/or by copackers.

In fact, Plaintiffs effectively concede that they cannot allege that the products were all even produced by Boar's Head, alleging that "[t]o the extent Defendant

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

1    contends that such Products were manufactured by third-party suppliers, Defendant
2    nonetheless adopted and disseminated the warranties as its own, and is liable for their
3    falsity." ¶139. That argument does not help Plaintiffs because, if the products did not
4    come from one of the Three Plants, they are not within the scope of Plaintiffs' claims.
5    *See* ¶72. Because Plaintiffs have not alleged facts to show that any of the products
6    they purchased emanated from the Three Plants, the Court should dismiss the SAC
7    and need not go any further. *See Matilock, Inc. v. Pouladdej*, 2020 WL 3187198, at
8    *4 (N.D. Cal. June 15, 2020) (pleading standards are "designed to prevent parties
9    from filing complaints to conduct fishing expeditions in the hope that they may
10   uncover some helpful evidence. . . . Plaintiff must still plead sufficient facts to make
11   a claim plausible as opposed to merely speculative.").

12        Even if Plaintiffs linked the products they purchased to the Three Plants, which
13   they have not done, the SAC still fails to plead injury/causation because Plaintiffs do
14   not allege facts to show that any condition referenced in any NR affected, existed at
15   the time of, or had anything to do with any particular product that Plaintiffs
16   purchased. As the SAC acknowledges, the Three Plants are large plants that produce
17   a variety of products. As reflected on the face of the NRs themselves, each NR is just
18   a snapshot in time, indicating conditions an FSIS inspector noted at the particular
19   time of the NR. The SAC does not allege facts to refute that (i) each condition in the
20   NRs was promptly remediated, and (ii) no enforcement action has been taken against
21   any of the Three Plants. As such, Plaintiffs have not alleged facts to show that any
22   sanitation issue existed at the time any product they purchased was manufactured or
23   even pertained to or affected the production process applicable to any product they
24   purchased as opposed to other unrelated areas of the plant (or a different plant).

25        Even with respect to Plaintiffs' new theory that the NRs reference equipment
26   such as "conveyor belts, incline belts, and racks" (¶¶16(a), 25(a), 35(a), 43(a)),
27   Plaintiffs do not allege facts to show how, to what extent, or if at all any such
28   equipment was used in the production of the particular products Plaintiffs purchased.

- 10 -

Moreover, Plaintiffs still do not refute that they consumed the products, had no issues therewith, and received the complete benefit therefrom. There are no allegations that anybody became sick from products from the Three Plants or that the ingredients of those products were misrepresented. Plaintiffs recklessly pepper the SAC with the word "contaminated," but that conclusory allegation is not entitled to a presumption of truth because Plaintiffs do not allege what product was allegedly contaminated, what it was contaminated with, and when. And the allegation is not plausible because, in addition to the fact that there was never any sickness or recall associated with the Three Plants, Plaintiffs do not refute that USDA/FSIS approved the production processes and products of the Three Plants at all relevant times.

*Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012), is on point in demonstrating that the SAC falls short of pleading standing. There, the plaintiffs alleged economic injury because the defendant failed to disclose the presence of arsenic and lead in its juice drinks. *Id.* at *1. The Court dismissed the Complaint for failure to allege injury, adopting the reasoning of an MDL court addressing the same claims:

> Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm. The products have not been recalled, have not caused any reported injuries, and do not fail to comply with any federal standards. The products had no diminished value due to the presence of the lead. Thus, Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these products.

*Id.* at *4 (internal quotes omitted).

Similarly, in *Meaunrit v. Pinnacle Foods Grp.*, 2010 WL 1838715, at *1 (N.D. Cal. May 5, 2010), the plaintiffs purchased the defendant's frozen pot pies, but were forced to discard them due to concerns about bacterial infection that could occur if they followed the microwavable cooking instructions. The Court dismissed the Complaint for lack of injury, holding:

> Plaintiffs do not allege that they were injured by contaminated pot pies. They do not even plead that others have become ill after consuming

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

- 11 -

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

Defendant's products. At most, Plaintiffs complain that the pies might contain harmful pathogens and, if consumers undercook Defendant's pot pies, these pathogens could cause illness. This speculative, hypothetical injury is not sufficient . . . .

*Id.* at \*3; *see also Barakezyan v. BMW of N. Am., LLC*, 2016 WL 2840803, at \*4 (C.D. Cal. Apr. 7, 2016) (no injury for claim that vehicle made excessive braking noise; "Plaintiff does not allege that the carbon ceramic brakes do not work as described; that he experienced any functional problems with the carbon ceramic brakes; that he is unwilling to drive his vehicle; that he sold or traded-in his vehicle at a loss; or any other facts that plausibly demonstrate any diminished value in his vehicle."); *Coffelt v. Kroger Co.*, 2018 WL 6004543, at \*11 (C.D. Cal. Aug. 17, 2018) (no injury even where the food product was subject to a recall because plaintiff did not show "the specific product she purchased manifested the purported defect").

Here, Plaintiffs' allegations provide even less support for injury or causation. Unlike in *Boysen* where the plaintiffs alleged contaminants in the products, *Barakezyan* where the product created a disturbing noise, or *Coffelt* where the product was recalled, here Plaintiffs do not allege facts to show that the products they purchased were actually subjected to or affected by any sanitation issue, contained any contaminants, were recalled, did not contain quality ingredients, or were not consumed as intended. *See Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at \*5 (N.D. Cal. Nov. 7, 2009) ("plaintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels" (emphasis in original)). Accordingly, Plaintiffs' theories of alleged injury and causation are, at most, "conjectural and hypothetical." *Birdsong*, 590 F.3d at 961.

### 2. The SAC Fails To Plead Consumer Deception

Plaintiffs' claims do not satisfy the "reasonable consumer" test, including, without limitation, because the statements are not alleged to be deceptive to a reasonable consumer and/or they constitute nonactionable puffery. "[C]laims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer'

is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).[8] As the Ninth Circuit held:

> This is not a negligible burden. To meet this standard, Plaintiffs must demonstrate more than a mere possibility that the seller's label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner . . . rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

*Id.* at 882 (internal quotes and brackets omitted). The Court "should take into account all the information available to consumers and the context in which that information is provided and used," which "may involve contextual inferences regarding the product itself and its packaging." *Id.* (internal quotes omitted). Where, as here, deceptive advertising claims are based "on unreasonable or fanciful interpretations . . . dismissal on the pleadings may well be justified." *Id.* at 883.

Additionally, "general, vague statements about product superiority" are puffery and are nonactionable. *Silver v. BA Sports Nutrition, LLC*, 2020 WL 2992873, at *5 (N.D. Cal. June 4, 2020); *see also Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (statements such as "durable," "rugged," "high performance," and "high value" were puffery). "District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to [Rule] 12(b)(6)." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Servs. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). As set forth below, none of the statements on which the SAC relies satisfies the reasonable consumer test or is actionable.[9]

**First Wave Statements** – Addressing two of the First Wave statements first since they are somewhat related, Plaintiffs have not stated a claim relating to the

---

[8] *See also Prescott v. Saraya USA, Inc.*, 2023 WL 6120610, at *3 (S.D. Cal. Sep. 18, 2023) (applying reasonable consumer test to fraud and negligent misrepresentation claims); *Zanelli v. Medtronic, Inc.*, 2024 WL 3467792, at *5 (C.D. Cal. July 10, 2024) (same as to express warranty claim).

[9] Paragraph 3 of the SAC quotes a "2020 Boar's Head commercial," which is irrelevant because none of the Plaintiffs claims to have seen or relied on it.

statements "Skillfully hand trimmed and handcrafted" and "Our products are not highly processed." ¶15(a), (l). Initially, these statements are nonactionable puffery because they are general and vague statements. The statements do not refer to any particular product, and are not even found on any product label but rather on a generalized website. Nor do the statements refer to any particular aspect of production. The statements are akin to other generalized statements about product quality that courts have held are puffery. *See infra* at 16-17.

Additionally, Plaintiffs have not pled facts, let alone with the particularity required by Rule 9(b), to show that these statements are false or likely to mislead reasonable consumers. Plaintiffs' new theory is that these statements were purportedly false because certain NRs reference equipment such as "conveyor belts, incline belts, and racks" and, on that basis, Plaintiffs allege their "purchases were mass-processed on automated equipment." ¶16(a). But Plaintiffs do not allege any facts to link the use of any such equipment to any of the particular products Plaintiffs purchased, nor do they allege for what purposes such equipment was used in the production process. Moreover, the fact that certain areas of the plants use mechanical equipment does not negate the truthfulness of the statements. Plaintiffs' allegations do not refute that there is also human involvement, including hand trimming, in the production process. And Plaintiffs' vague references to a few pieces of equipment in the plants does not show that the assertion "not highly processed" is false. For example, Plaintiffs' allegations do not refute that Boar's Head uses premium whole cuts of beef, pork, and poultry and fewer additives than its competitors.

Plaintiffs also neglect to mention the context of the phrase "Our products are not highly processed." The statement appears in an FAQ portion of the website in response to the question "How long do your deli meats stay fresh in the refrigerator." The answer is: "Our products are not highly processed. In order for you to enjoy optimum flavor, we recommend that you do not purchase more product than you can consume within three days." Dalman Dec. Ex. B. Any reasonable consumer would

understand this to mean that the deli meat is not made to have a long shelf life unlike other foods that are loaded with preservatives to last on the shelf for months or years. The statement is clearly intended to promote safety by urging consumers not to eat deli meats that have been in the refrigerator too long. It is not a representation that no equipment is used in the production process, and thus is not alleged to be false.

Nor does Plaintiffs' theory pass muster under the reasonable consumer test. A reasonable consumer of deli meats would know that Boar's Head is one of the largest deli meat manufacturers in the country, is a national brand, and manufactures a large variety of products. Indeed, Plaintiffs allege they viewed the representations on Boar's Head's website, and thus had reams of information about the wide variety of products under the Boar's Head brand. Moreover, any reasonable consumer knows that deli meats are not meats taken directly from the animal carcass, but rather product that has been transformed from its raw form into loaves or slices from loaves. Plaintiffs do not allege that deli meat from *any* manufacturer is made or even conceivably could be made without machinery. No reasonable consumer of deli meats would be led to believe from Boar's Head's website that the deli meat is miraculously spawned without the use of any equipment whatsoever. *See Moore*, 4 F.4th at 883 ("given the foraging nature of bees, a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source"); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) ("Only an unreasonable consumer would be confused or deceived by Cadbury's failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly."); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) ("no reasonable consumer would assume that Diet Dr Pepper's use of the term 'diet' promises weight loss or management"); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) ("it is simply not plausible that a significant portion of the general consuming public acting reasonably would conclude that Monini's mass produced, modestly-priced olive oil was made with

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

- 15 -

1  'the most expensive food in the world' [truffles]")[10].

2      Indeed, courts have held that "handcrafted" or even "100% handcrafted" is

3  puffery and, further, not deceptive where, as here, it would be unreasonable to

4  believe that no machinery was used in the production process. *See Barrett v.*

5  *Milwaukee Elec. Tool*, 2016 WL 4595947, at *5-*6 (S.D. Cal. Jan. 26, 2016)

6  (advertisement of hammer as "100% Handcrafted" was "more akin to inactionable

7  mere puffery" and cannot "be reasonably interpreted as meaning literally made by

8  hand nor that a reasonable consumer would understand the term to mean no

9  equipment or automated process was used to manufacture the hammers"); *Welk v.*

10  *Beam Suntory Import*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) (advertisement

11  of Jim Beam bourbon as "handcrafted" was puffery and "[a] reasonable consumer

12  wouldn't interpret the word 'handcrafted' on a bourbon bottle to mean that the

13  product is literally 'created by a hand process rather than by a machine'").

14      The remaining First Wave statements are also nonactionable puffery on which

15  a reasonable consumer would not rely. They are equivalent to the phrase

16  "Compromise Elsewhere" that the Court held is puffery. Decision 9-10. Indeed, they

17  are the same or similar to other statements on the Boar's Head website that a Court

18  recently held are puffery in another case arising from the *listeria* outbreak. *See*

19  *Renavitz v. Boar's Head*, 2025 WL 2506138, at *5 (D.N.J. Sep. 2, 2025). The

20  statements are not linked to any particular product, nor do they appear on product

21  packaging. They are vague statements of corporate aspiration, which are not

22  measurable by any objective standard. The statements are more vague and

23  generalized than product-specific statements at issue in other cases that courts have

24  deemed puffery. *See* Decision 10 (citing cases); *see also Klaehn v. Cali Bamboo,*

25  *LLC,* 2021 WL 3044166, at *8 (S.D. Cal. June 14, 2021), *aff'd*, 2022 WL 1830685

26  (9th Cir. June 3, 2022) ("long-lasting," "very hard," and "harder than any woods

27  available" were puffery); *Grassi v. Int'l Comfort Prods.*, 2015 WL 4879410, *6-*7

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

---

[10] *Jessani* was cited with approval by the Ninth Circuit in *Moore*, 4 F.4th at 884.

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

(E.D. Cal. Aug. 15, 2015) (statements that HVAC units were "manufactured to some of the industry's toughest standards" were puffery).

Additionally, Plaintiffs have not alleged that these general statements are false, let alone with the particularity required by Rule 9(b). The mere existence of NRs from daily inspections of the plants does not render false Boar's Head's belief that it produces quality products with quality ingredients. Indeed, Plaintiffs allege nothing to suggest that Boar's Head's ingredients, processes, and products are not superior to those of competitors in the industry. Because of the disconnect between the statements and the existence of NRs, Plaintiffs have not alleged consumer deception. *See Solis v. Coty, Inc.*, 2023 WL 2394640, at *7 (S.D. Cal. Mar. 7, 2023) (statements about product safety such as "dermatologically tested" and "suitable for sensitive skin" lacked a "cogent nexus" to plaintiff's claim that the product contained synthetic chemicals); *Sanchez v. Nurture, Inc.*, 2023 WL 6391487, at *6-*7 (N.D. Cal. Sep. 29, 2023) (representations regarding product healthfulness and protein and fiber benefits were not deceptive notwithstanding plaintiff's allegation of excessive amounts of sugar). Plaintiffs' theory, if upheld, would open the floodgates to litigation against every meat producer and other FSIS-inspected food producer who advertises the quality of its products simply due to the ordinary occurrence of NRs, and absent any health or safety issues with the purchased products.

**<u>Second Wave Statements</u>** – The Second Wave statements are all generalized statements about Boar's Head's belief in safety and sanitation, and therefore are non-actionable puffery. They do not convey the type of specific, measurable information required to support a cause of action. They do not pertain to any particular product, and they do not identify any specific process. Here, too, the statements are less specific than statements that courts have deemed to be puffery.[11] *Supra* 16-17.

Courts have held that similar general statements about safety standards are

---

[11] The only Second Wave statement that arguably pertains to a verifiable standard – "Production locations are Safe Quality Food (SQF)-certified" – is not alleged to be false, as discussed below.

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

puffery. For example, in *Baylor v. Honda Motor Co.*, 2024 WL 650415, at \*1 (C.D. Cal. Jan. 19, 2024), shareholders sued Honda for alleged misrepresentations as to, *inter alia*, the safety of Honda vehicles after a defect with the idle stop system came to light. The Court held that statements such as Honda is "offering products founded in safety" and "has created a system that continuously enhances and improves quality at every stage" were "vague, optimistic, and lacking in any objectively verifiable detail," and therefore were "mere puffery." *Id.* at \*5. Similarly, the Court held that statements such as that the vehicle is "at the forefront of safety" and is the "most sophisticated, technologically advanced minivan yet" were "non-verifiable puffery." *Id.*; *see also Bernstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1032 (D. Minn. 2009), *reconsideration denied*, 653 F. Supp. 2d 939 (D. Minn. 2009) ("[s]tatements that a nursing home will comply with or exceed 'applicable laws,' or that it has established 'rigorous standards'" were puffery, including because "[n]one of the statements references any particular standard or makes any specific promise"); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (statements such as Chipotle is "committed to serving safe, high quality food to its customers" and Chipotle's "food safety programs are also designed to ensure that the Company complies with applicable federal, state and local safety regulations" were "inactionable puffery" (brackets omitted)); *ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase*, 553 F.3d 187, 205-06 (2d Cir. 2009) (bank's statements that it has "risk management processes that are highly disciplined and designed to preserve the integrity of the risk management process," "set the standard for integrity," and would "continue to reposition and strengthen its franchises with a focus on financial discipline" were puffery (internal quotes and brackets omitted)).

In addition to the nonactionable nature of the Second Wave statements, Plaintiffs do not plausibly allege the statements were false, let alone with the particularity required by Rule 9(b). The SAC alleges only a single product contamination issue involving a single product (liverwurst) from a single plant

(Jarratt) in Boar's Head's 120-year history (and that issue was addressed and resolved via the nationwide class action settlement). As such, Plaintiffs have not plausibly alleged the commitment to safety is false.

Moreover, the existence of NRs is not inconsistent with the fact that Boar's Head's plants are subject to daily cleaning and inspections. If anything, the NRs confirm Boar's Head's plants are rigorously inspected and cleaned, with every perceived issue – regardless of magnitude – being documented and remediated. The SAC does not refute that each NR was timely and properly addressed. The SAC also does not allege that NRs are uncommon in meat processing plants or that any of the Three Plants was ever the subject of enforcement action or recall. Plaintiffs also do not and cannot allege that Boar's Head ever represented or suggested that its plants had not received NRs, nor that Boar's Head guaranteed that its plants would not receive NRs. A commitment to sanitation is not inconsistent with the fact that three large meat processing plants that are subject to daily governmental inspections had sanitation issues identified for remediation. Plaintiffs' allegations stop well "short of the line between possibility and plausibility of entitlement to relief," *Twombly*, 550 U.S. at 557, and certainly do not show with specificity that any of the Second Wave statements was actually false. *See Ong*, 294 F. Supp. 3d at 232 ("These allegations do not conflict with Defendants' statements regarding the food-safety programs and procedures that Chipotle had in place, but merely quibble with Chipotle's execution of those programs and procedures."); *Baylor*, 2024 WL 650415, at *6 ("It is not plausible, however, that statements that certain models were equipped with safety features affirmatively created an impression that every one of those vehicles would be free of defects.").

Plaintiffs have not sufficiently alleged falsity relating to the Second Wave statements for another independent reason. Plaintiffs allege they viewed the Second Wave statements "between December 2024 and January 2025." ¶18 (Buksbaum);

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

¶26 (Sabella); ¶44 (Hodges); *see also* ¶86.[12] However, the most recent NRs that Plaintiffs attach to the SAC are dated September 2024, pertaining to the Forrest City and Petersburg plants. Dkt. 14-1 at 119; Dkt. 14-3 at 122. Plaintiffs do not allege facts relating to the condition of the plants at the time they allegedly saw the Second Wave statements. Their claims premised on the Second Wave statements should be dismissed for this reason alone.

Plaintiffs' vague allegation that they purportedly viewed the Second Wave statements at some unspecified time "between December 2024 and January 2025" is also deficient because Plaintiffs allege that all information on which they premise their claims was publicly disseminated on January 15, 2025, when AP News published the NRs. ¶54. Plaintiffs' cagey allegation that they went to the website "between December 2024 and January 2025" creates the equally possible inference that Plaintiffs viewed the Second Wave statements, if at all, only *after* the article came out in mid-January 2025. Plaintiffs have not pled consumer deception or reasonable reliance as to the Second Wave statements for this reason as well.

With respect to the Second Wave statement, "Production locations are Safe Quality Food (SQF)-certified meeting Global Food Safety Initiative standards" (¶18(c)), the SAC again does not plead facts to show falsity. Plaintiffs do not and cannot allege any facts to show that the Three Plants were not SQF-certified. In fact, the Three Plants have been SQF-certified at least since 2022 through present. Nor does the SAC identify any GFSI standards that were not met or in what manner. Plaintiffs' vague and unfounded insinuations do not pass muster under basic pleading standards, let alone under Rule 9(b)'s specificity requirement (or Rule 11).

**_Nutritional Facts & Recipes_** – The SAC references three statements from the *Nutritional Facts & Recipes* booklet.[13] Two of the statements – "All of our products

---

[12] Plaintiff Thayer is not alleged to have viewed the Second Wave statements.
[13] The Decision granted Plaintiffs leave to amend only "as to the representations contained on Defendant's website." Decision 12. The claims based on the booklet should be dismissed for exceeding the scope of permissible amendment.

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM

are made with exceptional care and attention to quality" and "Since 1905, Boar's Head has been a family business. In the beginning, we had a very simple idea. . . ." (¶32(b) and (c)) – are puffery, and are not alleged to be false, for all of the same reasons discussed above with respect to the First Wave statements. *Supra* 16-17.

Plaintiffs' allegations pertaining to the remaining statement – "No artificial ingredients, minimally processed" (*id.* ¶32(a)) – are disingenuous and fail to state a claim. Plaintiffs neglect to mention that the booklet is clear that the statement pertains only to the "All Natural" product line. Dalman Dec. Ex. A at 1, 3, 27-31. The statement appears as a footnote that is connected by asterisk only to the All Natural product line. Plaintiffs do not allege any facts to show that this description of the All Natural product line is false. *Nor do Plaintiffs allege they purchased any All Natural products* (let alone Thayer, who is the only Plaintiff that allegedly saw this booklet).

In sum, Plaintiffs have failed to show there has been any consumer deception with respect to any of the statements at issue in the SAC, and thus the Court should dismiss the SAC in its entirety.

For the avoidance of doubt, any omission theory would be meritless as well. Plaintiffs are asking the Court to create a new standard that would require Boar's Head – and all other FSIS-inspected food manufacturers – to publish NRs on their labels and/or in their advertisements. Plaintiffs have not plausibly alleged such a duty, and there is none. NRs are publicly-available from USDA/FSIS. ¶54.

A duty to disclose requires showing either: "(1) the defect at issue presents an unreasonable safety hazard; or (2) the defect is material and central to the product's function, and one of the [*LiMandri* factors] is present." *In re Plum Baby Food Litig.*, 2025 WL 1200700, at *1 (9th Cir. Apr. 25, 2025). Plaintiffs do not satisfy either of these prongs. They do not plausibly allege that the existence of the NRs relates to an unreasonable safety hazard with respect to products from the Three Plants, let alone with respect to any particular product that they purchased. Each NR reflects a condition noted at a moment in time, and Plaintiffs have not linked any such

35298631.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

condition to any particular product or even to the process utilized for any particular product, let alone pled facts to show the safety of any product was compromised. *See id.* at *1 (claims that presence of heavy metals in baby food created an unreasonable safety hazard were "conjectural and hypothetical"). Plaintiffs' failure to plausibly allege that the NRs pertain to an "unreasonable safety hazard" is underscored by the fact that USDA/FSIS inspected and approved all products emanating from the Three Plants, there has never been a recall or suspension relating to those plants, and Plaintiffs do not allege that anybody became sick from any product emanating from the Three Plants.

For the same reasons, Plaintiffs also do not allege that products from the Three Plants somehow lost their "central function" or character – *i.e.*, that they ceased to function as food. Plaintiffs do not refute that they consumed and enjoyed the products without issue.[14] *See In re Plum*, 2024 WL 1354447, at *6 (N.D. Cal. Mar. 28, 2024), *aff'd*, 2025 WL 1200700, at *1 (9th Cir. Apr. 25, 2025) (plaintiffs did not show food product was "incapable of nourishment"); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1086 (N.D. Cal. 2022).

Plaintiffs fail to allege an actionable misrepresentation or omission and thus their claims should be dismissed.[15]

### 3. The Court Should Dismiss The SAC With Prejudice

The Court should dismiss the SAC with prejudice. Plaintiffs have not been injured, and the statements they rely on are nonactionable. These pleading deficiencies cannot be cured. Moreover, Plaintiffs have had three opportunities, and have shifted their theory each time, from labels, to website statements, to

---

[14] Plaintiffs also do not plausibly allege the existence of any of the *Limandri* factors, particularly given that NRs are publicly-available, FSIS-created records. There are no factual allegations of active concealment by Boar's Head, and for the same reasons discussed above, Plaintiffs do not allege an actionable partial representation.

[15] The SAC references all three prongs of the UCL, but the theory is the same – alleged fraud relating to the NRs. *See* ¶¶122, 123, 126. As such, the UCL claim is subject to the "reasonable consumer" requirement, and where, as here, "the predicate claims fail, the UCL claim also fails." *Hammerling*, 615 F. Supp. 3d at 1094; *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).

complaining about the use of equipment in the production of deli meat. They have failed to state a claim each time, demonstrating that further opportunities would be futile, unjust to Boar's Head, and a waste of judicial resources.

**B.    Additional Defects In The SAC Warrant Dismissing And/Or Striking Certain Claims**

Even if the SAC could get past the defects discussed in Part A above, it suffers from additional defects requiring that certain claims be dismissed and/or stricken.

### 1.    Claims Based On Packaging/Labels And Unspecified Materials

The Court dismissed Plaintiffs' claims premised on packaging and labels *without leave to replead*. Decision 9-10, 12. Yet, the SAC is replete with allegations purporting to challenge "packaging" and "labeling." *See* ¶¶5, 51, 63, 64, 67, 80, 85, 102, 110, 131, 135, 139. These allegations should be stricken and/or claims premised on them should be dismissed.[16] Plaintiffs also litter the SAC with vague references to "advertising," "public statements," "media and advertising channels," and "promotional materials." *See* ¶¶5, 51, 64, 80, 81, 102, 109, 132, 135, 145. Because the only statements the SAC identifies are the First and Second Wave statements and the booklet, Plaintiffs' claims should be dismissed to the extent they purport to rope in other unspecified materials.

### 2.    CLRA Monetary Claim

The SAC, like each of Plaintiffs' prior pleadings, violates the notice requirements to state a claim for damages under the CLRA. *See* Cal. Civ. Code §1782(a). The SAC relies on the notice that Plaintiffs sent on March 26, 2025. ¶¶70, 149. The Court already held, however, that the March 2025 notice was "substantively defective" since it "fail[ed] to specify 'the particular alleged violations' that are the subject of Plaintiffs' CLRA claim." Decision 11. Plaintiffs sent another notice, dated August 19, 2025, but that notice was untimely because Plaintiffs filed the SAC less than 30 days later on August 22, 2025.

---

[16] Under Rule 12(f), the Court may strike "any redundant, immaterial [or] impertinent" matter.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

Plaintiffs effectively acknowledge that they have still failed to comply with the notice requirements, alleging that they "therefore seek injunctive relief and restitution under the CLRA at this time" (¶149), and in the Prayer for Relief they seek "restitution, injunctive relief, disgorgement of profits" (¶J of Prayer). Plaintiffs' request for restitution and disgorgement falls within §1782(a)'s prohibition on "an action for damages" where, as here, the notice requirements have not been complied with. *See Sebastian v. Kimberly-Clark Corp.*, 2017 WL 6497675, at *7 (S.D. Cal. Dec. 18, 2017); *DeNike v. Mathew Enter., Inc.*, 76 Cal. App. 5th 371, 379-81 (Ct. App. 2022). Accordingly, the Court should dismiss the CLRA claim to the extent it seeks any monetary relief, including restitution and disgorgement. The dismissal should be with prejudice because Plaintiffs engaged in bad faith conduct by asserting a defective CLRA damages claim *three times*, forcing Boar's Head to incur the burden and expense of three motions to dismiss on this issue.

### 3.    Injunctive Relief

To have standing for injunctive relief, a plaintiff "must establish a real and immediate threat of repeated injury," and "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Gonzales*, 2024 WL 4609853, at *3 (internal quotes omitted). Putting aside all of the defects with Plaintiffs' claims discussed above (including lack of any injury at all), Plaintiffs have not shown and cannot show a threat of nonspeculative repeated "injury." Plaintiffs are explicitly aware that NRs are public documents that can be obtained from USDA/FSIS. If Plaintiffs are interested in the conditions of the plants before purchasing products in the future, they can request NRs from USDA/FSIS. Moreover, the NRs on which Plaintiffs rely for their claims only reflect historic moments in time, and Plaintiffs have not shown that each condition was not already remediated.

Additionally, the injunctive relief Plaintiffs seek is preempted by the FMIA/PPIA. Plaintiffs seek an order enjoining "Defendant from selling the relevant products"; "from suggesting or implying that the relevant products are premium or

safe"; and an unspecified "corrective advertising campaign." ¶¶B, C, and D of Prayer. Such relief would require the Court to impose requirements/restrictions on Boar's Head "premises, facilities and operations" and the "[m]arking, labeling, packaging" of its products that are inconsistent with those imposed by USDA/FSIS under the FMIA and PPIA. 21 U.S.C. §§467e, 678; *see In re Tobacco Cases II*, 2002 WL 31628641, at *5 (Super. Ct., San Diego Cty. Nov. 22, 2022), *aff'd*, 41 Cal. 4th 1257 (2007) (claims were preempted by Federal Cigarette Labeling and Advertising Act; "what a particular state court considers unlawful and therefore bans (through a UCL injunction/regulation) might very well differ such that allowing state court regulation of advertising that purportedly targets minors could not but create a hodgepodge of conflicting or inconsistent state injunctions/regulations, undermining Congress' purpose in enacting" the statute). The safety of Boar's Head's operations and products is determined by USDA/FSIS when they stamp the products "inspected and passed," thereby allowing for commercial sale. 21 U.S.C. §§458(a)(2), 606(a).

Plaintiffs' sole alleged basis for seeking injunctive relief runs headlong into preemption. Plaintiffs allege they would "purchase the products again if they were assured the products were not prepared in unsanitary, dangerous, and contaminated conditions, and were in fact prepared with the superior level of quality and care claimed by Defendant." ¶48. In addition to the fact that Plaintiffs can obtain NRs and decide for themselves whether to purchase products in the future, the allegation confirms that Plaintiffs are asking the Court to dictate the conditions of the plants, which the FMIA and PPIA preemption clauses prohibit. *See* 21 U.S.C. §§467e, 678.

## V. CONCLUSION

The Court should dismiss the SAC in its entirety, with prejudice.

Respectfully submitted,

Dated: October 6, 2025

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Jonathan C. Sandler
Jonathan C. Sandler
Attorneys for Defendant

DEFENDANT'S MOTION TO DISMISS
Case No: 3-25-cv-00597-RSH-BLM