UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARYN BUKSBAUM, JANINE SABELLA, DEBORAH THAYER, DIESHA HODGES, California residents, individually, and on behalf of all other similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>BOAR'S HEAD PROVISIONS CO., INC., DOES 1 to 10, inclusive,<br><br>                                    Defendants. | Case No.:  25-cv-597-RSH-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[ECF No. 18] |

Pending before the Court is a motion to dismiss Plaintiffs' Second Amended Complaint, filed by defendant Boar's Head Provisions Company ("Boar's Head" or "Defendant"). ECF No. 18. As set forth below, Boar's Head's motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND

On February 13, 2025, Plaintiffs filed this putative class action against Boar's Head in the Superior Court of California, County of San Diego. ECF No. 1. On March 13, 2025, Defendant removed the action to this Court. *Id*.

1

On April 10, 2025, Plaintiffs filed a First Amended Complaint (the "FAC"), as of right pursuant to Federal Rule of Civil Procedure 15(a)(1). ECF No. 5. On April 24, 2025, Defendant filed a motion to dismiss the FAC. ECF No. 7. On August 1, 2025, the Court granted Defendant's motion to dismiss and granted Plaintiffs leave to amend. ECF No. 13. On August 22, 2025, Plaintiffs filed a Second Amended Complaint (the "SAC"), the operative pleading. ECF No. 14.

The SAC alleges as follows. Defendant manufactures, markets, and distributes food products nationwide, including through major retailers in California. ECF No. 14 ¶¶ 1, 10. Defendant markets its products as being high-quality and prepared under sanitary conditions. *Id.* ¶ 1.

Plaintiffs Sharyn Buksbaum, Janine Sabella, Deborah Thayer, and Diesha Hodges ("Plaintiffs") are four California consumers who allegedly purchased various Boar's Head food products—including but not limited to EverRoast Chicken, Vermont Cheddar Cheese, Mesquite Wood Smoked Roasted Turkey, Ovengold Turkey Breast, Sweet B's Honey Barbeque Glazed Chicken Breast, and Hard Salami (the "Products")—from retailers between June 2022 and January 2025. *Id.* ¶¶ 14–40. Plaintiffs further allege that they each read, understood, and relied on marketing representations from Defendant's website before making their purchases. *Id.* ¶ 46.

On January 15, 2025, an AP News report disclosed unsanitary conditions documented by U.S. Department of Agriculture ("USDA") inspection reports at a number of Defendant's facilities. *Id.* ¶ 54. Plaintiffs allege that the Products they purchased were manufactured at three of Defendant's facilities. *Id.* ¶¶ 13, 22, 31, 39. The three facilities at issue, referred to herein as the "Three Plants," are located in Forrest City, Arkansas; New Castle, Indiana; and Petersburg, Virginia. *Id.* ¶ 10. Plaintiffs allege that the reported conditions at the Three Plants included "meat and fat residue left on equipment and walls," "dripping condensation contaminating food," "mold growth," and "insect infestations." *Id.* ¶ 55.

The SAC alleges that Defendant's representations about the quality of its products

25-cv-597-RSH-BLM

and hygiene of its production methods were false and/or misleading as to products that were made at any of the Three Plants. *Id.* ¶¶ 51–66. The SAC specifically identifies nineteen representations on Defendant's website and three representations from Defendant's printed *Nutrition Facts & Recipes* booklet.[1] *Id.* ¶ 15. Plaintiff Thayer is the only named plaintiff who reviewed and relied on the representations from the *Nutrition Facts & Recipes* booklet. *Id.* ¶ 32.

Plaintiffs seek certification of a class consisting of: "All persons in California who

---

[1] The website representations are: (1) "Skillfully hand trimmed and handcrafted"; (2) "Uncompromising quality means maximum results in your kitchen"; (3) "Since 1905, our standards of quality have never wavered"; (4) "We will continuously improve our time-honored traditional processes through the involvement of our dedicated employees"; (5) "Our standards for quality have never wavered"; (6) "The highest standards… We insist on the same unwavering commitment to quality we established over a century ago, standards mostly abandoned in a mass-produced world"; (7) "Each meets our highest standards of excellence"; (8) "No cutting corners, no compromises. No sacrificing quality for profits"; (9) "Products made to standards rarely found today"; (10) "Our standards for quality have never wavered—a value passed down from one family member to the next"; (11) "We choose to only bring to market products that we believe in, products that meet the standards set for us long ago"; (12) "Our products are not highly processed"; (13) "Food safety is at the core of everything we do"; (14) "Strict food safety standards and protocols are embedded in our processes and procedures"; (15) "Production locations are Safe Quality Food (SQF)-certified and meet Global Food Safety Initiative (GFSI) standards"; (16) "Facilities undergo scrupulous daily cleaning and sanitation processes"; (17) "Our commitment to the highest standards of sanitation is evidenced through stringent cleaning protocols, regular inspections, and advanced sanitation technologies"; (18) "Sanitation is a cornerstone of our food safety commitment"; (19) and "By embracing the latest advancements, we meet or exceed industry standards, reinforcing our commitment to delivering safe, high-quality products every step of the way." ECF No. 14 ¶¶ 15–45.

The representations in the booklet are: (20) "No artificial ingredients, minimally processed"; (21) "All of our products are made with exceptional care and attention to quality"; (22) "Since 1905, Boar's Head has been a family business. In the beginning, we had a very simple idea. Make the finest cold cuts possible. Nothing less. We still insist on the same unwavering commitment to those standards we established long ago." *Id.* ¶ 137.

The numbering of the statements above is added by the Court, for use in referring to those statements in this order.

purchased any Boar's Head product originating from plants in Forrest City, Arkansas, New Castle, Indiana, and Petersburg, Virginia, from the time beginning three years before this Complaint is filed until the resolution of this litigation." *Id.* ¶ 72.

The SAC asserts claims for (1) intentional misrepresentation; (2) negligent representation; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) breach of express warranty; and (6) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)(5). *Id.* ¶¶ 79–151. Plaintiffs seek damages, restitution, disgorgement, and injunctive relief. *Id.* at 74–75.

On October 6, 2025, Defendant filed a motion to dismiss the SAC. ECF No. 18. The motion is fully briefed. ECF Nos. 23 (Opposition), 24 (Reply).

## II.    LEGAL STANDARD

Defendant moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, including for failure to plead allegations of fraud with particularity under Rule 9(b).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When reviewing a motion to dismiss under Rule 12(b)(6), courts assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving

4

party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). But a court "disregard[s] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Likewise, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). "After eliminating such unsupported legal conclusions, [courts] identify 'well-pleaded factual allegations,' which [are] assume[d] to be true, 'and then [courts] determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus VPC*, 623 F.3d at 1003. Dismissal under Rule 12(b)(6) is proper where there is no cognizable legal theory to support the claim or when there is an absence of sufficient factual allegations to support a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

For claims alleging "fraud or mistake," a heightened pleading standard applies. Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "requires … an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "Averments of fraud must be accompanied by 'the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). A pleading must also identify "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.,* 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the

25-cv-597-RSH-BLM

charge and not just deny that they have done anything wrong.") (citation and internal quotation marks omitted)).

## III.   ANALYSIS

### A.   Standing

Standing is a threshold matter that a plaintiff must establish for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc*., 528 U.S. 167, 185 (2000). Standing requires that (1) the plaintiff suffered an injury-in-fact — one that is "sufficiently concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable" to the challenged conduct, and (3) the injury is "likely" to be "redressed by a favorable decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A "quintessential injury-in-fact" can occur when a plaintiff alleges that they "spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Defendant challenges Plaintiffs' standing in several ways. First, Defendant argues that Plaintiffs have failed to allege an injury-in-fact that is traceable to the challenged conduct, because "Plaintiffs still have not alleged facts to show that the products they purchased were manufactured at the Three Plants as opposed to having been manufactured at other plants or by copackers." ECF No. 18 at 9. However, the SAC does indeed allege, for each Plaintiff, that the Products that he or she purchased were made at the Three Plants, explaining that these facilities processed specified products for sale in California, where each Plaintiff purchased them. ECF No. 14 ¶¶ 13, 22, 31, 39. Although Defendant derides these allegations as "guesswork," ECF No. 18 at 9, they are sufficient for purposes of standing at this stage.

Second, Defendant argues, "Plaintiffs still do not refute that they consumed the products, had no issues therewith, and received the complete benefit therefrom." *Id.* at 11. These arguments misconstrue Plaintiffs' theory: Plaintiffs allege that they were economically harmed by relying on specified false representations in paying an "artificially inflated price premium." ECF No. 14 ¶ 47. These allegations are sufficient to establish that

25-cv-597-RSH-BLM

Plaintiffs have suffered an economic injury in reliance on Defendant's misrepresentations. *Singh v. Google LLC*, 824 F. App'x 512, 513–14 (9th Cir. 2020) (concluding plaintiff adequately alleged an economic injury when he alleged that he would not have purchased the product but for his reliance on defendant's alleged misrepresentations); *Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 696, 697–98 (9th Cir. 2013) (concluding that a plaintiff suffers an economic injury if he "surrender[s] in a transaction more . . . than he . . . otherwise would have.").

Finally, Defendant argues that Plaintiffs lack standing to seek injunctive relief because Plaintiffs have not shown a threat of "repeated injury"; according to Defendant, Plaintiffs can consult publicly available reports from the U.S. Department of Agriculture before deciding whether to purchase products from Defendant in the future—such that they would not be misled in the future. ECF No. 18 at 24.

In the Ninth Circuit, "[a] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," if the plaintiff "adequately allege[s] that she faces an imminent or actual threat of future harm caused by [the defendant's] false advertising." *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018). Here, the SAC alleges that "Plaintiffs would purchase the products again if they were assured the products were not prepared in unsanitary, dangerous, and contaminated conditions, and were in fact prepared with the superior level of quality and care claimed by Defendant." ECF No. 14 ¶ 48. Under *Davidson*, such allegations, presumed to be true, are sufficient at the pleading stage. *See* 889 F.3d at 970–71; *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 688 (N.D. Cal. 2021) (concluding that plaintiff had standing because he was open to purchasing products if he could rely on defendant's representations); *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083, 1093 (N.D. Cal. 2023) (applying *Davidson* and concluding that plaintiff's allegations that she "would consider purchasing" defendant's products in the future were sufficient to confer standing). The fact that Plaintiffs can consult past

25-cv-597-RSH-BLM

government reports about Defendant's facilities does not deprive Plaintiffs of standing to seek to enjoin future false advertising.

### B.    Consumer Deception

Under the FAL, the CLRA, and the UCL, conduct is considered deceptive or misleading if the conduct is "likely to deceive" a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). This standard also applies to common law claims for negligent and intentional misrepresentation. *See Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. App'x. 561, 562 (9th Cir. 2008) (concluding that the justifiable reliance element of negligent misrepresentation equates to the reasonable consumer standard); *Correia v. Johnson & Johnson Consumer*, No. CV 18-9918 PSG (ASX), 2019 WL 2120967, at *3 (C.D. Cal. May 9, 2019) (applying the reasonable consumer standard to intentional misrepresentation claim). The Ninth Circuit has explained, in the context of a motion to dismiss, that "[t]his is not a negligible burden. To meet this standard, Plaintiffs must demonstrate 'more than a mere possibility that [the seller's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner ... [r]ather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Courts should "take into account all the information available to consumers and the context in which that information is provided and used." *See id.*

In contrast to statutory consumer claims, a breach of express warranty claim focuses not on deception, but on whether an express factual representation was breached. *See Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1031 (N.D. Cal. 2016) ("To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.").

"[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (citation and internal quotation marks omitted). "[G]eneralized, vague[,] and unspecific assertions[,] constitute mere 'puffery' upon which a reasonable consumer could not rely." *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003). Puffery does not include "misdescriptions of specific or absolute characteristics of a product." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). Statements that constitute puffery also cannot serve as a basis for a breach of warranty claim. *See Hong v. RugsUSA, LLC*, --- F. Supp. 3d ---, No. 24-cv-8799-AMO, 2025 WL 2710096, at *6 (N.D. Cal. Sept. 23, 2025).

Defendant argues that the majority of the representations at issue constitute non-actionable puffery, and as such, cannot form the basis for Plaintiffs' claims. ECF No. 18 at 12, 16. For purposes of the analysis herein, the Court divides the representations into categories, as follows.

First are general statements about the quality of the Products.[2] None of these

---

[2]   The statements include: (2) "Uncompromising quality means maximum results in your kitchen"; (3) "Since 1905, our standards of quality have never wavered"; (5) "Our standards for quality have never wavered"; (6) "The highest standards… We insist on the same unwavering commitment to quality we established over a century ago, standards mostly abandoned in a mass-produced world"; (7) "Each meets our highest standards of excellence"; (8) "No cutting corners, no compromises. No sacrificing quality for profits"; (9) "Products made to standards rarely found today"; (10) "Our standards for quality have never wavered—a value passed down from one family member to the next"; (11) "We choose to only bring to market products that we believe in, products that meet the standards set for us long ago"; (19) "By embracing the latest advancements, we meet or exceed industry standards, reinforcing our commitment to delivering safe, high-quality products every step of the way"; (21) "All of our products are made with exceptional care and attention to quality"; (22) "Since 1905, Boar's Head has been a family business. In the beginning, we had a very simple idea. Make the finest cold cuts possible. Nothing less. We

statements—whether phrased in terms of the quality of products, the company's commitment to quality, or the company's standards of quality—relate to a specific or absolute characteristic of the Products, and none of these representations can be objectively verified or disproved. These statements are too vague to be actionable. *See Shroyer*, 622 F.3d at 1043 (affirming dismissal of fraud claim as puffery where defendant company's advertisement was a "vague statement" containing no concrete assertions); *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (defendant's statements describing "high priority" placed on product development were non-actionable puffery); *Cook*, 911 F.2d at 246 (an advertising claim is mere puffery—as opposed to a verifiable representation of fact-when it is so vague, highly subjective, or meaninglessly general as to preclude consumer reliance); *Fraker v. KFC Corp.*, No. 06CV1284 JM(WMC), 2006 WL 8430934, at *3 (S.D. Cal. Oct. 19, 2006) ("The claims 'highest quality' and 'best food' are vague, highly subjective claims not subject to empirical verification."); *Golden W. Trading, Inc. v. BelGioioso Cheese, Inc.*, No. CV097803GHKAGRX, 2010 WL 11515277, at *3 (C.D. Cal. Feb. 19, 2010) (concluding that representations of "freshest milk and highest quality ingredients available" were not objectively verifiable); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (statements regarding quality and reliability are puffery).

Second are general statements about *commitments* to sanitation or safety.[3] These statements of commitment—similar to the statements of commitment to quality—are

---

still insist on the same unwavering commitment to those standards we established long ago."

[3]    The statements are: (13) "Food safety is at the core of everything we do"; (17) "Our commitment to the highest standards of sanitation is evidenced through stringent cleaning protocols, regular inspections, and advanced sanitation technologies"; (18) "Sanitation is a cornerstone of our food safety commitment"; and (19) "By embracing the latest advancements, we meet or exceed industry standards, reinforcing our commitment to delivering safe, high-quality products every step of the way."

25-cv-597-RSH-BLM

vague, generalized, and aspirational. They do not support the reliance of a reasonable consumer. *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (concluding that statements "emphasiz[ing] a desire to commit to certain 'shared values' [are]... not capable of objective verification"); *Hawkins v. Shimano N. Am. Bicycle Inc.*, No. 8:23-CV-02038-JVS (JDE), 2024 WL 4405249, at *4 (C.D. Cal. Aug. 1, 2024) (concluding that defendant's statement about its commitment to innovation was aspirational puffery); *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 976–77 (N.D. Cal. 2015) (concluding that commitment to ethical practices was "inherently aspirational and hence immaterial"); *Plumley v. Sempra Energy*, 2017 WL 2712297, at *7 (S.D. Cal. June 20, 2017) (determining statements regarding "commitment to or prioritization of safety" to be corporate puffery because they were "too nonspecific and unmeasurable").

Third are statements about manufacturing and related processes. Some of these statements are vague and generalized, while others contain elements that are specific and objectively measurable claims. In some instances, however, those elements that are specific and objectively measurable are not elements that Plaintiffs contend are false.

(1) *"Skillfully hand trimmed and handcrafted."* This statement is non-actionable puffery as to "skillfully" and as to "handcrafted." *See Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1043–44 (S.D. Cal. 2015) (concluding that the word "handcrafted" on a bourbon bottle was puffery because it was "generalized, vague, and unspecified"). The claim that the Products are "hand trimmed" is a closer case; in a given context, such a claim could be construed as more concrete and subject to verification. But Plaintiffs' theory of falsity here is not that no trimming was done by hand; instead, it is that the Products "were mass-produced on automated equipment under filthy conditions, not skillfully hand-trimmed." ECF No. 14 ¶ 16(a). The use of automated equipment is not inconsistent with human hands being used to trim lunchmeat; and a representation that such trimming is "skillful" is not one on which a reasonable consumer would rely.

(4) *"We will continuously improve our time-honored traditional processes through*

*the involvement of our dedicated employees."* Like the statements of commitment discussed above, this statement is vague and aspirational, and is non-actionable. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (determining that "strong," "robust," "well positioned," "solid," and "improved" were too vague to be actionable).

(12) *"Our products are not highly processed."* Because deli meats are widely understood to be processed to some degree, at issue here is whether the assertion that the Products are "highly" processed is actionable. *See* ECF No. 14 ¶ 69. Defendant points out that this statement is made in an FAQ portion of the website in response to the question "How long do your deli meats stay fresh in the refrigerator?"[4] ECF No. 18 at 14. The complete answer is: "Our products are not highly processed. In order for you to enjoy optimum flavor, we recommend that you do not purchase more product than you can consume within three days." *Id.* The Court concludes that the adjective "highly" as used here, in a claim about the shelf life of lunchmeat, is not susceptible of objective verification, and would not induce the reliance of a reasonable consumer. *See O'Neil v. Kroger Co.*, 2020 Cal. Super. LEXIS 1874, *3–6 (Cal. Super. Ct. July 9, 2020) (concluding that description of a product as "artisan," with a further definition in the complaint as "not mass produced in a highly mechanized way," was non-actionable puffery).

(14) *"Strict food safety standards and protocols are embedded in our processes and procedures."* The SAC describes this statement as a "process claim about internal systems." ECF No. 14 ¶¶ 18, 26. Defendant's opening brief does not appear to address this statement with any specificity—either arguing that it is non-actionable puffery or arguing that Plaintiffs have failed to plead facts plausibly establishing that the statement is false. Nor does Defendant's reply brief. Courts have held similar statements about quality assurance and quality control tests to be actionable as objective statements capable of being

---

[4]   The Court takes judicial notice of the web page at issue, ECF No. 18-3, which Plaintiffs do not oppose. *See* ECF No. 23 at 24.

12

25-cv-597-RSH-BLM

verified through discovery. *See Watson v. Solid Gold Pet, LLC*, No. CV 18-6479 PSG (SSX), 2019 WL 3308766, at *3 (C.D. Cal. Feb. 22, 2019) (concluding that defendant's statement that ingredients "pass strict quality control measures" and "undergo multiple checkpoints against key health and safety criteria" was not puffery); *Anunziato*, 402 F. Supp. 2d at 1140 (finding that the phrase "most stringent quality control tests" is actionable, and not puffery); *Zieger v. WellPet LLC*, 304 F. Supp. 3d 837, 851 (N.D. Cal. 2018) (finding statements that "during production, rigorous standards and practices are put in place to protect the nutritional integrity of our food" actionable); *Lack v. Cruise Am., Inc.*, No. 17-cv-03399-YGR, 2017 WL 3841863, at *3 (N.D. Cal. Sept. 1, 2017) (concluding "specific representations about the processes [defendant] had completed before offering for sale a particular [product]" were actionable). Plaintiffs allege that this statement is false. *See* ECF No. 14 ¶¶ 18, 26, 44, 45, 81. Similar to the cases cited above, this Court concludes that this statement is actionable.

(15) *"Production locations are Safe Quality Food (SQF)-certified and meet Global Food Safety Initiative (GFSI) standards."* Defendant agrees that this particular statement is not puffery. ECF No. 18 at 17 n.11. Indeed, whether Defendant's production locations have a particular certification is a fact subject to verification. However, Plaintiffs explain their theory as follows:

> Plaintiffs are not challenging the truth of the SQF statement itself (Mot. at 20), but only the surrounding "scrupulous cleaning" and "strict protocols" claims, and that Defendant's actual practices fall far below standards despite certification. The defect is not the certification, but that Boar's Head used the existence of SQF certification to reinforce factual assurances about daily cleaning practices, sanitation rigor, and embedded protocols that contemporaneous USDA findings contradict.

ECF No. 23 at 12. In other words, in Plaintiffs' view, this statement becomes misleading when coupled with the earlier statement, "Strict food safety standards and protocols are embedded in our processes and procedures." Plaintiffs' explanation of their theory renders this statement, on its own, non-actionable.

(16) *"Facilities undergo scrupulous daily cleaning and sanitation processes."* This statement is aspirational and non-actionable as to the description of cleaning and sanitation processes as "scrupulous." *See Kalin v. Semper Midas Fund, Ltd.*, No. 22-16766, 2023 WL 8821325, at *1 (9th Cir. Dec. 21, 2023) (concluding that "'rigorous' cannot be proven objectively true or false," thus the statement is non-actionable puffery). In contrast, the claim that the company has processes for daily cleaning and sanitation is subject to verification. But Plaintiffs' theory of falsity is not that the company lacks processes for daily cleaning and sanitation; rather, it is that the company's processes are not sufficiently "scrupulous" to remove residue from prior days. ECF No. 14 ¶ 19(d). Like the preceding statement, this statement is non-actionable puffery as it applies to Defendant's theory of deception.

(20) *"No artificial ingredients, minimally processed."* Defendant does not contend that this particular statement, contained in the *Nutrition Facts & Recipes* booklet, is puffery. Instead, Defendant's motion argues that "the booklet is clear that the statement pertains only to the 'All Natural' product line." ECF No. 18 at 21. Defendant continues:

> The statement appears as a footnote that is connected by asterisk only to the All Natural product line. Plaintiffs do not allege any facts to show that this description of the All Natural product line is false. *Nor do Plaintiffs allege they purchased any All Natural products* (let alone Thayer, who is the only Plaintiff that allegedly saw this booklet).

*Id.* Plaintiffs do not respond to this argument. Given that the booklet statement at issue was limited to the All Natural product line, and the only Plaintiff who allegedly viewed the booklet does not allege that she purchased those products, the Court concludes that Plaintiffs have failed to state a claim of deception or breach of warranty as to this statement.[5]

In summary, the *only* statement that Court determines to be actionable here is the

---

[5]    The Court takes judicial notice of the booklet, ECF No. 18-2, which Plaintiffs do not oppose. *See* ECF No. 23 at 24.

25-cv-597-RSH-BLM

following statement from Defendant's website: (14) *"Strict food safety standards and protocols are embedded in our processes and procedures."* The SAC alleges that plaintiff Buksbaum read this statement on Defendant's website before purchasing EverRoast Chicken and Cracked Pepper Mill Turkey at Sprouts and Ralph's between December 2024 and January 2025. *See* ECF No. 14 ¶ 18. The SAC identifies the addresses of these grocery store locations. *Id.* ¶ 14. The SAC includes allegations with a similar level of detail as to plaintiffs Sabella and Hodges. *See id.* ¶¶ 23, 26, 40, 44. The SAC does not allege that plaintiff Thayer relied upon or was aware of this representation. *See id.* ¶¶ 28-36. The Court is satisfied that the level of detail provided satisfies the requirements of Rule 9(b) as to the purchases made by Buksbaum, Sabella, and Hodges. *See* ECF No. 13 at 8.

Finally, the SAC appears to allege omissions as an independent basis for liability. These allegations are highly generalized. The SAC contains allegations about the subject matter of these omissions—an alleged lack of sanitation—but does not identify with particularity what, in Plaintiffs' view, Defendant was required to disclose. "Omissions may be the basis of claims under California consumer protections laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006)). In *Hodson*, the Ninth Circuit held that a plaintiff failed to state a claim for consumer fraud on an omission theory, where the plaintiff failed to allege that the undisclosed fact—there, "the existence of slave or child labor in a product's supply chain"—"affects the product's central function." 891 F.3d at 864. The Ninth Circuit explained, "[h]ere, the alleged lack of disclosure about the existence of slave labor in the supply chain is not a physical defect at all, much less one related to the chocolate's function as chocolate. Plaintiff contends that he has "'no practical use' for the products tainted by slave or child labor, but the central functionality of the product is not based on subjective preferences about a product." *Id.* The Ninth Circuit affirmed the district court's dismissal of the plaintiff's consumer claims on this theory. *Id.* at 868.

25-cv-597-RSH-BLM

Plaintiffs' response is that conditions under which the Products were produced here "go directly to the safety, sanitation, and value of ready-to-eat meat, which is the 'central function' of the product." ECF No. 23 at 18. But this reasoning is foreclosed by *Hodson*. Plaintiffs allege no physical defect in the Products, much less one related to the Products' central function as lunchmeat. The Court concludes that the SAC fails to state a standalone claim for consumer fraud based on material omissions.

## C.    Damages Under the CLRA

The CLRA provides a thirty-day pre-filing notice requirement for "an action for *damages*." Cal. Civ. Code § 1782(a) (emphasis added). For these purposes, "[c]laims for restitution and disgorgement qualify as actions for damages." *See Sebastian v. Kimberly-Clark Corp.*, No. 17cv442-WQH-JMA, 2017 WL 6497675, at *7 (S.D. Cal. Dec. 18, 2017); *see also Acosta v. Ethicon, Inc.*, No. CV205992DSFGJSX, 2021 WL 2548686, at *6 (C.D. Cal. Apr. 16, 2021) (same); *Reed v. Dynamic Pet Prod.*, No. 15CV0987-WQH-DHB, 2015 WL 4742202, at *7 (S.D. Cal. July 30, 2015) (same). In contrast, the CLRA permits a claim for *injunctive relief* without giving pre-filing notice, and permits a plaintiff to amend his or her complaint to add a damages request after giving the required notice. *Id.* § 1782(d). "The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007) (collecting cases).

The Court previously determined that for purposes of seeking monetary relief under the CLRA, Plaintiffs' pre-filing notice was untimely; the notice was sent on March 26, 2025, fewer than 30 days before filing the FAC on April 10, 2025. ECF No. 13 at 11. Thereafter, on August 19, 2025, Plaintiffs sent Defendant an amended CLRA notice. But this notice was untimely too, because Plaintiffs sent it fewer than 30 days before they filed the SAC on August 22, 2025. *See Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1222 (E.D. Cal. 2013) (analyzing timeliness of CLRA notice based on the filing date of the operative pleading). Accordingly, the Court dismisses Plaintiffs' CLRA claim inasmuch as it seeks monetary relief. *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196

25-cv-597-RSH-BLM

(S.D. Cal. 2005) (concluding that courts have required "[s]trict adherence to the statute's notice provision ... to accomplish the Act's goals of expeditious remediation before litigation").

### D.      Preemption of Injunctive Relief

Lastly, Defendant contends that the injunctive relief that Plaintiffs seek is preempted by the Poultry Products Inspection Act ("PPIA") and the Federal Meat Inspection Act ("FMIA"). ECF No. 18 at 24-25. Those two federal statutes include parallel express preemption provisions that prohibit states from imposing requirements within the scope of the acts "with respect to premises, facilities and operations of any establishment at which inspection is provided under" the acts,  and "[m]arking, labeling, packaging, or ingredient requirements" which are "in addition to, or different than those made under" the acts. *See* 21 U.S.C. §§ 467e, 678.

Defendant argues that "[t]he safety of Boar's Head's operations and products is determined by USDA/FSIS when they stamp the products 'inspected and passed,' thereby allowing for commercial sale." ECF No. 18 at 25 (citing 21 U.S.C. §§ 458(a)(2), 606(a)). The Court considers this argument in the context of the determinations above—that Plaintiffs have alleged a single actionable statement, from Defendant's website, that "[s]trict food safety standards and protocols are embedded in our processes and procedures." If this statement is determined by a jury to be deceptive, the Court does not see how ordering appropriate injunctive relief—including enjoining Defendant from continuing to make that statement—would be preempted by federal product labelling regulations. There is no indication that this same statement is contained on product labelling or has been approved by federal regulators. *See Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1291 (9th Cir. 2021) ("[T]he website representation materially differs from the product label. Accordingly, Cohen's state law claims challenging ConAgra's website representation that the chicken products as a whole contain no preservatives, artificial flavors, or artificial colors, are not preempted (whether or not the product labels were reviewed and approved by FSIS."). The Court declines to dismiss Plaintiffs' request for

25-cv-597-RSH-BLM

injunctive relief.[6]

### E.    Leave to Amend

"Rule 15(a) declares that leave to amend shall be freely given when justice so requires[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (citation omitted). "[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (quotations omitted).

Plaintiffs have previously amended their complaint twice. Here, the Court determined that most of the alleged misrepresentations are non-actionable puffery because they are not verifiable factual representations. The allegations of additional facts cannot cure this defect. *Cook*, 911 F.2d at 247 (affirming the district court's denial of leave to amend because "the advertisement was not a factual representation and therefore not actionable, no amendment would have been able to cure this defect"). Nor is there any indication in Plaintiffs' briefing of an intent to offer new theories of deceptiveness, or to support their existing theories with additional material facts. Additionally, Plaintiffs have twice failed to provide timely notice of the CLRA claim for damages; and on neither occasion did Plaintiffs provide a meaningful response to the argument that their notice was untimely. *See* ECF No. 8 at 23-24; ECF No. 23 at 20. The Court concludes that, in light of prior amendments, granting further leave to amend would be futile and result in undue delay. The Court exercises its discretion to decline further leave to amend. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already

---

[6]    Given the reasoning above, the Court denies as moot Defendant's request for judicial notice of Food Safety and Inspection Service records. *See* ECF Nos. 18-4, 18-5.

granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'").

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Defendant's motion to dismiss [ECF No. 18]. Of the twenty-one misleading statements alleged in the SAC, Plaintiffs may proceed only as to the following: "Strict food safety standards and protocols are embedded in our processes and procedures." Because plaintiff Deborah Thayer does not allege awareness of this representation, she is **DISMISSED** from the action as a plaintiff.  As set forth above, Defendant's motion is in other respects **DENIED**.[7] The Court **DENIES** further leave to amend.

**IT IS SO ORDERED**.

Dated: March 5, 2026

Hon. Robert S. Huie
United States District Judge

---

[7]   Defendant's motion seeks, as an alternative to dismissal, to strike unspecified portions of the SAC. *See* ECF No. 18 at 3 ("Notwithstanding that the Court already dismissed, without leave to replead, Plaintiffs' claims based on products and labels, the SAC continues to assert such claims. The Court should dismiss and/or strike such claims and allegations."). In light of the ruling herein, and the lack of specificity in Defendant's request, the Court declines the request to strike.

25-cv-597-RSH-BLM